426 So.2d 1258 (1983)
Robert Lee DIXON, Appellant,
v.
STATE of Florida, Appellee.
No. 82-447.
District Court of Appeal of Florida, Second District.
February 11, 1983.
Rehearing Denied March 2, 1983.
Robert E. Jagger, Public Defender, and Robert J. Krauss, Asst. Public Defender, Clearwater, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
This is an appeal from a conviction of first degree murder and attempted robbery. Because we must reverse due to certain trial errors, it is unnecessary to recount the facts of the case.
The defendant testified in his own behalf. The following appears as the last question and answer on direct examination:

*1259 Q Considering what you have testified to here today, Mr. Dixon, is there anything else that you would like to say on your own behalf, add or subtract, based upon what you've told us here today?
A The only thing I can say is the time that I have been incarcerated, I have been thinking how in the world I come into this. I don't know how I come into this. I did not do it. I've never hurt nobody in my life. I've never robbed nobody in my life. I don't know nothing about it. I don't know the man.
On cross-examination, the state was permitted, over objection, to ask the defendant if it were true that on various specified dates he was arrested for strong armed robbery, burglary, grand theft, attempted robbery, involuntary rape, contempt, robbery, fighting, burglary, aggravated assault and grand theft. The defendant attempted to explain away these arrests by saying that he had not raped anybody and that he had never hurt anyone intentionally.
The admission of evidence of an accused's prior arrests is ordinarily deemed so prejudicial that it automatically requires reversal of his conviction. Fulton v. State, 335 So.2d 280 (Fla. 1976). Here, the court permitted this line of inquiry upon the theory that when the defendant made the statement quoted above he put his character in issue, and as a consequence, the state was permitted to ask about prior arrests. This was a misapplication of Robinson v. State, 393 So.2d 33 (Fla. 1st DCA 1981), which holds that the state may cross-examine a defendant's character witness by asking whether he knew of an existing felony charge pending against the defendant. Such a question is pertinent because the character witness's lack of knowledge of a prior arrest may affect his opinion concerning the defendant's reputation. Greenfield v. State, 336 So.2d 1205 (Fla. 4th DCA 1976). The same reasoning does not apply to the instant case because the defendant obviously knew about his prior arrests.
Under Florida's new evidence code, evidence of a person's character or a trait of his character is inadmissible to prove that he acted in conformity with it on a particular occasion except under certain limited circumstances. § 90.404(1), Fla. Stat. (1981). One exception permits, in a criminal case, the admission of evidence of a pertinent character trait of the accused offered by him, or by the prosecution to rebut the trait. § 90.404(1)(a). However, except when character or a trait of character is an essential element of the case, proof of a person's character should be made through testimony about his reputation. § 90.405, Fla. Stat. (1981).
In view of the evidence code, it is doubtful that by making his gratuitous statement the defendant could be said to have placed his character in issue. See C. Ehrhardt, West's Florida Practice § 404.4 (1977). However, even if he did, the state should have proved his bad character through testimony about the defendant's reputation, not by cross-examination about prior arrests.
We also take this opportunity to mention another evidentiary error which can be avoided upon retrial. To understand this point, one must appreciate that it was the state's theory that the defendant committed these crimes at the Blue Diamond Bar in the company of Willie Waldron and "Red" Settle. Over the defendant's objection, Lillian Waldron, who was the sister of Willie Waldron, testified concerning a statement made by "Red" Settle that he, Waldron and another man whom Lillian knew committed a robbery and did some shooting at the Blue Diamond Bar. The state wanted this testimony because it had already been established that Waldron and the defendant were together on the night of the murder. However, the statement of Settle to Lillian Waldron clearly constituted hearsay, and its admission into evidence also may have violated the Bruton rule. See Hall v. State, 381 So.2d 683 (Fla. 1980).
We hereby reverse the judgments and remand the case for a new trial.
BOARDMAN, A.C.J., and DANAHY, J., concur.