467 So.2d 761 (1985)
Shirley A. TERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 83-2751.
District Court of Appeal of Florida, Fourth District.
April 10, 1985.
Rehearing and Rehearing Denied May 15, 1985.
*762 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff and Cherry Grant, Asst. Public Defenders, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert L. Teitler, Asst. Atty. Gen., West Palm Beach, for appellee.
Rehearing and Rehearing En Banc Denied May 15, 1985.
ANSTEAD, Chief Judge.
Shirley Terry appeals her conviction of manslaughter with a firearm. She contests the trial court's refusal to admit expert opinion evidence on the battered woman syndrome and evidence of her mental state on the issue of the voluntariness of her post-arrest statement. We reverse.
Terry was charged with second degree murder in the shooting death, on July 8, 1982, of her boyfriend, Oscar Mercer. On December 20, 1982, she was found mentally incompetent to stand trial and committed to state care. Her competency was restored on June 15, 1983 and upon trial a jury returned a verdict of manslaughter with a firearm. She was adjudged guilty thereon and sentenced to twenty years in prison.
The state presented evidence in its case-in-chief and on rebuttal of Mercer's shooting death at the hands of Terry and of previous threats by Terry to kill Mercer. While this evidence was substantial, we must focus on the evidence presented by Terry in order to determine whether the trial court's rulings contested herein were correct. In her defense Terry admitted the shooting but claimed that she acted in self-defense. She testified that she and Mercer had had an intimate relationship for about four years. During that time Mercer made numerous physical attacks upon her. Such attacks were sometimes administered with bottles and boards and often resulted in injuries requiring medical care. When she moved to her mother's house, Mercer pursued her and threatened to shoot her. When she moved into her own apartment, he broke in several times, beating her when he got in. About three weeks before the shooting, Mercer tied her up, threatening to take her out to Alligator Alley and abandon her to the elements. He did not do so.
*763 On the day of the shooting Terry called Mercer from a bar to let him know where she was, fearing that he would beat her if he found that out from other sources. He came by and ordered her into the car. They stopped at her apartment where Mercer ordered her to undress in order to have sexual relations. Afterwards, Mercer got her back in the car, telling her again that he should take her to Alligator Alley to let the alligators eat her, although he subsequently said he didn't mean he was really going to take her there. However, as they drove down the street, Mercer repeatedly hit her. She was afraid he would kill her, knowing that he sometimes had a shotgun under the front seat and he also carried a knife. At that point she pulled a gun she had in her purse and shot him. The car went out of control and crashed into another vehicle. The driver of the other vehicle testified that she saw Terry and the deceased tussling over the gun. Terry finally got hold of the gun and tried to fire it again, but it jammed. She then threw it away and drove off in the car. The police stopped Terry a few minutes later and Mercer could not be revived. Terry gave a statement to the police admitting the shooting. Terry's mother also testified to seeing Terry tied up, to seeing Mercer beating Terry and to often taking Terry to the hospital because of the beatings.
The court refused to allow evidence by Terry to explain the so-called battered woman's syndrome, a psychological condition which Terry claimed contributed to her decision to stay with Mercer despite his physical abuse of her, and to her subsequent decision to shoot Mercer because of her fear that he would carry out his threats against her. The trial court also refused to allow a proffer of this evidence. Terry also objected to the introduction of her post-arrest statement, arguing that her mental state precluded an intelligent waiver of her rights. The court disallowed psychiatric and psychological evidence to demonstrate her position and admitted the statement.
The battered woman's syndrome has been described as a condition wherein a woman who has had a long-standing personal relationship with a man in which she is frequently subjected to physical abuse, remains with the man but eventually acts against him because of her fear that his continued abuse will mortally injure her. See State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984). This court has not previously addressed the issue of the admissibility of expert opinion evidence as to the syndrome. However, our sister courts in Hawthorne v. State, 408 So.2d 801 (Fla. 1st DCA 1982), rev. denied, 415 So.2d 1361 (Fla. 1982), and Borders v. State, 433 So.2d 1325 (Fla. 3d DCA 1983), have given qualified approval to the use of such evidence as it relates to a defendant's claim of self-defense. We endorse those decisions today.
The Hawthorne opinion rejected the state's contention that the syndrome was simply an insanity defense dressed up in different clothing:
We think there is a difference between offering expert testimony as to the mental state of an accused in order to directly "explain and justify criminal conduct," Tremain [v. State, 336 So.2d 705], at 706, [(Fla. 4th DCA 1976)], and the purpose for which the expert testimony was offered in the instant case. In this case, a defective mental state on the part of the accused is not offered as a defense as such. Rather, the specific defense is self-defense which requires a showing that the accused reasonably believed it was necessary to use deadly force to prevent imminent death or great bodily harm to herself or her children. The expert testimony would have been offered in order to aid the jury in interpreting the surrounding circumstances as they affected the reasonableness of her belief. The factor upon which the expert testimony would be offered was secondary to the defense asserted. Appellant did not seek to show through the expert testimony that the mental and physical mistreatment of her affected her mental state so that she could not be responsible for her actions; rather, the testimony *764 would be offered to show that because she suffered from the syndrome, it was reasonable for her to have remained in the home and, at the pertinent time, to have believed that her life and the lives of her children were in imminent danger. It is precisely because a jury would not understand why appellant would remain in the environment that the expert testimony would have aided them in evaluating the case.
408 So.2d at 806-07 (footnote omitted).
The state asserts that Hawthorne and Borders conflict with Zeigler v. State, 402 So.2d 365 (Fla. 1981) and Tremain v. State, 336 So.2d 705 (Fla. 4th DCA 1976), which stand for the proposition that during the guilt phase of the trial, testimony regarding the mental state of a defendant in a criminal case is inadmissible in the absence of a plea of not guilty by reason of insanity. Here, Terry did not plead insanity, but sought instead to establish that she acted in self-defense. For the same reasons articulated by the First District in Hawthorne, we reject the state's contention that Tremain and Zeigler control.
We agree that there is a difference between offering testimony as to the mental state of an accused when insanity is an issue at trial and offering testimony on self defense, the specific defense raised below. It does not appear that appellant was seeking to introduce evidence that she was unable at the time of the incident to distinguish right and wrong or unable to understand the wrongness of the act committed;[1] rather, it appears that she was offering evidence to show that because of the prior conduct of the victim towards her, she reasonably believed that danger was imminent and that there was a real necessity for the taking of life.[2] From our review of the record it appears that the expert testimony on the battered woman syndrome would have been offered to aid the jury "in interpreting the surrounding circumstances as they affected the reasonableness of her belief" Hawthorne, 408 So.2d at 806-07. Of course, care must be taken to insure that a defendant is not allowed to justify his or her conduct simply on the basis that the victim was a "bad" person. However, we do not believe the risk of that happening outweighs a defendant's entitlement to present evidence relevant to a claim of self defense.
We believe that this holding is also consistent with the liberal policy on admission of evidence embodied in the evidence code endorsed by the legislature and the Florida Supreme Court, in sections 90.702 and 90.703, Florida Statutes (1981). Those sections provide:
Testimony by experts.  If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
Opinion on ultimate.  Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.
This language is fully consistent with the test for admission approved in Hawthorne and Borders which we endorse today. Because of the present state of the record and a lack of a detailed proffer, our determination, like that of our sister courts, is subject on retrial to a determination that the *765 expert is qualified and the field sufficiently developed to support an expert opinion. See Kelly, Hawthorne and Borders. Since no determination was made at trial, in Hawthorne or in Borders, as to the adequacy of the expert's qualifications or the extent to which the expert's methodology was generally accepted, and indicating that the subject matter could support a reasonable expert opinion, those courts noted that their rulings were subject to the trial court's determining that the expert is qualified and that the subject is sufficiently developed and can support an expert opinion. See, e.g., Hawthorne, 408 So.2d at 806.
The state also relies here, as it did in the trial court, on this court's decision by per curiam affirmance without opinion in Garbin v. State, 429 So.2d 15 (Fla. 4th DCA 1983) as precedential authority for refusing the admission of expert evidence on the battered woman's syndrome. This reliance is unjustified. We caution the parties and trial courts not to rely on decisions of this court or other appellate courts rendered without opinion as precedential authority in other cases. Where a per curiam affirmance emanates from the appellate court to which the case is being cited, "a court may take the view that it desires not to consider such case in any circumstance, and it may properly disregard such a reference in briefs or oral arguments presented to it." Department of Legal Affairs v. District Court of Appeal, 434 So.2d 310, 313 (Fla. 1983). A decision without opinion becomes the law of the case but it does not establish precedent as to any legal issues decided for purposes of application to other cases.
Terry also claims the court erred in disallowing expert evidence which would have demonstrated that her mental state at the time of the post-arrest statement affected her ability to voluntarily waive her Miranda rights. As we noted earlier, Terry was initially adjudged incompetent to stand trial. The state again argues that pursuant to Tremain and Zeigler evidence of Terry's mental condition was properly excluded in the absence of an insanity defense. Terry counters by citation to cases where the defendant's mental confusion did not rise to the level of insanity, yet the courts suppressed the confession in reliance upon such evidence. For example, in Fields v. State, 402 So.2d 46 (Fla. 1st DCA 1981), the court considered statements by the defendant, a juvenile, regarding his inability to afford a lawyer, and expert testimony that the defendant had a reduced mental ability, in deciding that he did not comprehend his Miranda rights and thus, his statements to the police were involuntary.
For generally the same reasons set out above in discussing the battered woman's syndrome we believe the trial court erred in not allowing evidence of appellant's mental state at the time her statement was given. While not admissible on the issues of guilt or innocence, this evidence should be considered to resolve the issue of the voluntariness of the appellant's statement and her ability to knowingly and willingly waive her rights.
In conclusion, we reverse and remand for a retrial because of the trial court's refusal to permit evidence on the battered woman's syndrome and evidence of the appellant's mental state as it affected the voluntariness of appellant's post-arrest statement.
DELL, J., and GEIGER, DWIGHT L., Associate Judge, concur.
NOTES
[1] See Gurganus v. State, 451 So.2d 817 (Fla. 1984) (Florida follows the McNaughton test for insanity).
[2] See McKnight v. State, 341 So.2d 261 (Fla. 3d DCA 1977) (in order to justify a homicide on the ground of self defense, the situation must be such as to induce a reasonably prudent person that danger was imminent and that there was a real necessity for the taking of life); see also § 782.02, Fla. Stat. (1981), which provides:

Justifiable use of deadly force.  The use of deadly force is justifiable when a person is resisting any attempt to murder such person or to commit any felony upon him or upon or in any dwelling house in which such person shall be.