584 So.2d 579 (1991)
CSX TRANSPORTATION, INC. and City of West Palm Beach, Appellants,
v.
Jerry C. WHITTLER and Marsha Whittler, His Wife, and Paul L. Maddock, Jr., and Judith Cady Maddock, As Personal Representatives of the Estate of Paul L. Maddock, Sr., Appellees.
Nos. 89-0033, 89-0112 and 90-2390.
District Court of Appeal of Florida, Fourth District.
July 17, 1991.
Rehearing Denied August 23, 1991.
*580 John Wilbur of Coe & Broberg, Palm Beach and John Beranek of Aurell Radey, Hinkle & Thomas, Tallahassee, for appellant-CSX Transp., Inc.
Charles W. Musgrove, West Palm Beach, for appellant-City of West Palm Beach.
Richard D. Schuler of Schuler Wilkerson & Halvorson, P.A., and Philip M. Burlington, of Edna L. Caruso, P.A., West Palm Beach, for appellees-Jerry and Marsha Whittler.
Robert G. Merkel of Adams Coogler Watson & Merkel, P.A., and Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., West Palm Beach, for appellees-Paul L. Maddock, Jr., and Judith Cady Maddock, as Personal Representatives of the Estate of Paul L. Maddock, Sr.
EN BANC
PER CURIAM.
This appeal arises out of a negligence action in which the jury awarded appellees, Jerry C. and Marsha Whittler, damages for personal injuries Mr. Whittler suffered while working for CSX Transportation, Inc. ("CSX"), when he was struck by a van owned by the City of West Palm Beach ("the city"). We affirm.

*581 FACTS
At the direction of his supervisor, Whittler drove a CSX vehicle to a private motor vehicle repair garage on Elizabeth Avenue in West Palm Beach for repair of the vehicle. The CSX supervisor had visited the garage on previous occasions and had contracted with its personnel for service and repair of CSX vehicles. Another CSX employee followed Whittler in a separate vehicle to provide Whittler transportation back to his work site. When Whittler reached the garage, a tow truck was parked in the entrance to the premises. The coworker parked across the street and remained in the vehicle. When the garage personnel told Whittler that they could not begin repairs for at least an hour, Whittler walked outside to convey this information to his coworker. Whittler testified that as he walked across the parking lot of the garage he saw his coworker on the driver's side in a reclining position, perhaps asleep. He shouted but the coworker did not respond. Whittler then approached the street curb at a point immediately adjacent to a large city-owned garbage dumpster to again attempt to shout to his coworker. At this point Whittler was suddenly struck in the head by an oncoming city van approaching from the other side of the dumpster. Whittler denied ever intending to cross the street or leave the curb. He recalled that he was standing beside the dumpster, approximately two to three feet behind the curb, just before he was hit. Both the van driver and Whittler denied seeing the other before the actual impact.

PROCEDURAL POSTURE
Whittler sued CSX, the city, and the owner of the garage. Whittler claimed CSX was negligent by failing to provide him with a reasonably safe place to work, i.e., the garage premises, and by his coemployee's failing to warn him of the approaching van. Whittler sued the city on two theories of negligence: one was the city's liability for its employee who drove the vehicle which struck him; and another was its replacing the dumpster in a location which obstructed the vision of motorists and pedestrians. Whittler also sought recovery from the garage owners for placement of the dumpster.
The jury returned a verdict in Whittler's favor and apportioned responsibility as follows:

 Whittler 27%
 CSX 35%
 Garage Owner 2%
 City re: conduct of van driver 0%
 City re: placement of dumpster 36%

A judgment was entered on this verdict, and another was entered in favor of the garage owner for indemnity against the city.

THE CITY'S LIABILITY
The city asserts error in the court's denial of its motion for directed verdict on sovereign immunity grounds, and also contends that the position of the dumpster was open and obvious, thereby warranting judgment in its favor as a matter of law.
When the accident occurred, the dumpster was located on the public right-of-way, about a foot away from the curb adjacent to the garage premises. It is uncontroverted that while standing beside the eight-foot tall, four-foot wide dumpster, Whittler could neither see nor be seen by oncoming traffic. Over a period of time, the dumpster had "moved" from its original location on the private garage premises toward the street and onto the sidewalk. On one occasion, this movement prompted a request by the garage that the city return the dumpster to its original location away from the curb. Within a few days, the city complied with this request. However, with the passage of time, the dumpster again "moved" back onto the sidewalk and remained there for several years before the accident.
The duty of placing dumpsters throughout the city rested with the city sanitation department. The city's superintendent of sanitation admitted that the dumpster was improperly placed on the public right-of-way. A former director of public works testified that in placing the dumpster on a public right-of-way, the city violated its own code provisions. These provisions required the city to place dumpsters on private property unless it secured permission *582 from the director of public works to place them on public property like the right-of-way. One objective underlying the code provision was to ensure the unobstructed vision of pedestrians and motorists. A trial witness who began working at one of the three businesses on the premises ten days before the accident testified that in that short time she had experienced several near accidents as she exited the driveway because the dumpster had obstructed her vision. A seven-year employee of another business on the premises testified that the dumpster was always located very close to the road.
The city was the only entity legally authorized to remove the dumpster in question. A dumpmaster driver for the city, who at one time serviced the Elizabeth Avenue section, testified to having seen dumpsters located next to the curb on the grassy strip between the curb and the sidewalk. The city used specialized equipment to pick up, empty, and replace the dumpsters. Garbage truck drivers were instructed not to place the dumpsters between the sidewalk and the curb. Any driver who noted that a dumpster was in the wrong place was required to notify his supervisor and request direction as to its possible removal.
In City of Delray Beach v. Watts, 461 So.2d 142 (Fla. 4th DCA 1984), we reversed a judgment against a city and held that the placement of a garbage dumpster was a planning level decision, and an open and obvious condition requiring judgment for the city as a matter of law. While the opinion may have been directed only to the initial placement of the dumpster, we cannot discern that fact from the face of the opinion. No factual circumstances are set out in the opinion. However, we conclude here that the negligent moving and replacing of a dumpster to an unsafe position does not constitute a planning level activity. Rather, in our view, the act or omission by the dumpmaster driver in placing the dumpster in a hazardous position on the public right-of-way in violation of the city code, constituted operational level conduct by those employees. We see little difference between the alleged misconduct here and a situation where a dumpmaster driver negligently causes the dumpster to fall on a vehicle or pedestrian while moving the dumpster. See, e.g., Scheckler v. City of Mount Dora, 395 So.2d 1188 (Fla. 5th DCA 1981).
The city also maintains that it was improperly held liable here because the location of the dumpster was open and obvious, and therefore, the location of the dumpster was not the proximate cause of the accident. On this issue we believe the trial court properly submitted the issue of comparative negligence to the jury. See Stewart v. Boho, Inc., 493 So.2d 95 (Fla. 4th DCA 1986). Here, there was evidence of a violation of a city ordinance which evidently had underlying safety concerns in eliminating obstructions to the vision of motorists and pedestrians alike. Also, there was evidence presented from which a jury could have reasonably found that the dumpster did, in fact, constitute a hazard. See Scheckler. Of course, there was also evidence that the plaintiff was negligent and, in fact, the jury found the plaintiff to be comparatively negligent.
Although there may be no actual conflict, depending on the facts in Watts, by this en banc opinion we recede from any statements in Watts contrary to our holding here.[1]

CLAIMS AGAINST CSX
Whittler's claim against CSX is based on the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51. In Rogers v. Missouri Pacific Railroad, 352 U.S. 500, 507-508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493, 500 (1957), the supreme court summarized the congressional intent underlying the FELA:
The law [FELA] was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due *583 in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than a single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.
(Emphasis added). Under the Act, the employer has the duty to provide a safe place to work, whether it be on railroad premises or other premises to which the employee has reported to perform job-related duties. Shenker v. Baltimore and Ohio Railroad Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963).

SUFFICIENCY OF EVIDENCE
Under this point, CSX claims entitlement to a directed verdict. First, it argues that it had no duty to warn Whittler because the dumpster was an obvious danger, and refers us to decisions holding that a landowner's duty to warn does not arise if the person on the premises of another has knowledge of the danger that is equal to or superior to that of the landowner. In Stewart v. Boho, Inc., 493 So.2d 95 (Fla. 4th DCA 1986), we held that since the advent of comparative negligence, the "open and obvious" hazard doctrine no longer bars recovery. Instead, the doctrine serves as an affirmative (comparative negligence) defense for landowners confronted by a plaintiff who knew of the danger. See Metropolitan Dade County v. Yelvington, 392 So.2d 911 (Fla. 3d DCA 1980).
Decisional law on the FELA also makes it clear that the railroad's duty in these circumstances is distinct from, and even broader than, that of a landowner. For example, in Cazad v. Chesapeake & Ohio Railway Co., 622 F.2d 72, 75 (4th Cir.1980), the railroad defendant similarly attempted to equate its duty owed to its employee with that owed by the landowner defendant. The court rebutted this attempt:
... C & O contends that since it was found to be negligent, it necessarily follows that Union Oil was negligent, since Cazad concededly was injured on the property of Union Oil. The flaw in this argument, however, is that any negligence on the part of Union Oil must be determined under the common law of West Virginia, whereas C & O's negligence under the FELA is to be determined as a matter of federal law in interpreting and implementing the Act. Kennedy v. Pennsylvania Railroad Co., 282 F.2d 705 (3 Cir. 1960).
* * * * * *
The evidence presented in the district court demonstrated beyond question that the drain culvert on Union Oil's property constituted an open and obvious hazard... . Under these circumstances, the conclusion is inescapable that, as a matter of law, the plaintiff's injuries were not caused by any negligence on the part of Union Oil. Accordingly, it was not error to dismiss the third-party complaint against it. C & O's liability under the FELA, however, is a different matter, for it had the nondelegable duty to provide Cazad and its other employees with a safe place to work even when their duties required that they go onto property owned by a third party. Shenker v. Baltimore & Ohio Railroad Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963) Chesapeake and Ohio Railway Co. v. Thomas, 198 F.2d 783 (4 Cir.1952), cert. denied, 344 U.S. 921, 73 S.Ct. 387, 97 L.Ed. 709 (1953). This duty includes the responsibility to inspect the premises where its employees will be working and to take reasonable precautions to protect its employees from possible danger. Carter v. Union Railroad Co., 438 F.2d 208 (3 Cir.1971).
(Emphasis added.)
In these circumstances, where there was evidence of CSX's familiarity with the garage premises and evidence of the longstanding hazardous condition of those premises created by the movement of the dumpster, we find no error by the trial *584 court in submitting the issue of CSX's liability under the FELA to the jury. We also find no error in allowing appellant to claim the accident may have been caused in part by his coemployee's neglect. The record reflects that Whittler alleged CSX's liability through its employee's actions, and that CSX was aware of the evidence of the coemployee's neglect well prior to trial.

WORKER'S COMPENSATION
CSX complains that the trial court improperly informed the jury that Whittler had not received worker's compensation benefits. Although the FELA preempts the application of state tort law in cases falling within its ambit, federal courts have deemed it improper for a jury in a FELA case to consider the plaintiff's ineligibility for worker's compensation benefits. See, e.g., Stillman v. Norfolk & Western Railway Company, 811 F.2d 834 (4th Cir.1987).
The trial court gave the following instruction to the jury after counsel for CSX and counsel for Whittler agreed that an instruction on the topic was necessary.
THE COURT: Ladies and gentlemen, the parties have agreed I should give you this, I guess statement concerning the case.
Two of the parties in the case are Mr. Whittler and CSX. Mr. Whittler was an employee of CSX at the time the accident took place.
Some of you may have at some time in your life been involved in workers' compensation or may have heard of that type of workers compensation.
And if you have heard of that, I just want to advise you that that is not involved in the case. This case is part  one of the issues is a claim by an employee against CSX.
Mr. Whittler does not receive workers' compensation and will not receive workers' compensation.
No party objected to the giving of this instruction until CSX, well into the trial, complained that it went beyond its stipulation.
While the judge's instruction, as phrased, may have exceeded that stipulated to by counsel, we believe any claim of error was waived by the lack of an objection, and also by the subsequent repeated references to the same matter by both sides without objection. Sharpe v. Herman A. Thomas, Inc., 294 So.2d 14 (Fla. 3d DCA 1974).

EXPERT TESTIMONY
CSX contends the trial court abused its discretion in admitting, over its objections, the testimony of safety accident reconstruction and human factors experts, and in failing to grant a mistrial during the course of their testimony. We find no abuse of discretion by the trial court.
In Kruse v. State, 483 So.2d 1383, 1384 (Fla. 4th DCA 1986), we construed sections 90.702, and 90.403, Fla.Evid.Code, and set forth a four-prong test for the admissibility of expert testimony: (1) the opinion evidence must be helpful to the trier of fact; (2) the witness must be qualified as an expert; (3) the opinion evidence must be applied to evidence offered at trial; and (4) the evidence, although technically relevant, must not present a substantial danger of unfair prejudice that outweighs its probative value. There we stated that the first three prongs of this test embody a liberal policy on the admission of expert evidence, generally rendering such evidence admissible to the extent that it is helpful to the trier of fact. Id. However, we also noted that the trial judge's broad discretion in this regard is curtailed by the principle that such testimony should usually be received only where the disputed issue for which the evidence is offered is beyond the jury's understanding. Kruse, 483 So.2d at 1385 (citing Johnson v. State, 393 So.2d 1069, 1072 (Fla. 1980)).
It appears the trial court did not abuse its discretion in admitting the experts' testimony. Here, there were no eyewitnesses to the accident. The plaintiff had no memory of the actual incident, and the van driver was deceased. Since CSX failed to object to the qualifications of any of the three experts, the second criterion of the Kruse test is automatically satisfied with regard to all three. Numerous Florida decisions have held that an expert may testify *585 as to whether an area is safely maintained, whether a dangerous condition exists, and whether warnings should have been given. Millar v. Tropical Glades Corporation, 99 So.2d 589 (Fla. 3d DCA 1958) and Gifford v. Galaxie Homes of Tampa, Inc., 223 So.2d 108 (Fla. 2d DCA 1969), cert. denied, 229 So.2d 869 (1969) (error to refuse to permit experts to render opinions regarding whether the areas where the plaintiffs were injured were constructed and maintained according to reasonably safe standards); Scheckler v. City of Mount Dora, 395 So.2d 1188 (Fla. 5th DCA 1981) (error to exclude expert testimony regarding whether the city maintained a safe dumpster, and whether the city should have given any warnings). See also Holiday Inns v. Shelburne, 576 So.2d 322 (Fla. 4th DCA 1991); Buchman v. Seaboard Coast Line Railroad Co., 381 So.2d 229 (Fla. 1980); Seaboard Coast Line Railroad Co. v. Kubalski, 323 So.2d 32 (Fla. 4th DCA 1975). Finally, it is not apparent, and CSX has not demonstrated, how the probative value of the testimony on direct examination was outweighed by a substantial danger of unfair prejudice. We therefore do not believe the trial court abused its discretion in admitting this testimony.

MOTIONS FOR MISTRIAL
CSX also contends that the trial court erred in denying its motions for mistrial made during a heated and extensive cross-examination of the plaintiff's safety expert, who was outspoken in his criticism of CSX's safety policies. Whittler notes without challenge that this expert was cross-examined for six and one-half hours, and that during the questioning, the exchange was heated on both sides.
CSX cites five instances in which it claims that a mistrial should have been ordered. However, the record discloses only three instances in which mistrial motions were made. The first of these occurred after the safety expert testified that worker's compensation and OSHA did not apply to railroads. The court overruled CSX's objection to this statement and denied its motion, stating that it had already instructed the jury not to be concerned with the inapplicability of worker's compensation. As already discussed, at that point in the trial, counsel for both Whittler and CSX had already informed the jury that worker's compensation did not apply to the case. Consequently, the safety expert's additional reference to the inapplicability of worker's compensation to these circumstances did not severely prejudice CSX, so as to warrant the extreme remedy of mistrial.
CSX again moved for mistrial after the expert testified, "[t]he main thing is [railroads] have absolute control of their employees and an absolute duty to protect their employees at all times wherever they are if they are on railroad business." The court denied the motion for mistrial, but instructed the jury to disregard the comment and rely solely on the court's instructions as to the railroad's duty. When asked by the court whether it could disregard the comment, the jury collectively responded in the affirmative. Therefore, the expert's misstatement does not appear so "highly prejudicial and inflammatory" such that it was incurable, as contended by CSX. Rather, the court subsequently charged the jury on the correct law:
... CSX had a continuous duty to exercise ordinary care under the circumstances to provide its employees with a reasonable place to work. This duty extended to the property of others over which CSX has no control where employees are required to go for short periods... . [a]nd includes the duty to inspect the property and take reasonable precautions to protect Jerry Whittler from possible dangerous conditions. .. .
We find no error in the trial court's denial of a mistrial based on its conclusion that this instruction cured the error. Powell v. Goldner, 483 So.2d 468 (Fla. 3d DCA 1986); Riley v. Jackson, 246 So.2d 625 (Fla. 3d DCA 1971).
In two of the three remaining instances in which CSX claims it moved for mistrial, the record bears out CSX's mere objections. In those instances, the court sustained CSX's objections and instructed *586 the jury to disregard the witness's answers as being non-responsive. CSX adequately moved for mistrial in the third instance, in which the expert responded during cross-examination: "You are crediting an awful lot to the common sense and good judgment. I don't know whether that exists in the CSX system." Immediately thereafter, CSX requested sanctions, and stated its belief that this was the fifth occasion on which it had moved for mistrial to no avail.
In any event, CSX subsequently moved to strike the entire testimony of the expert as non-responsive and prejudicial. The court instructed the jury to disregard the particular statement related above as being non-responsive. However, it denied the subsequent motion for mistrial, stating that it would adequately cover bias or prejudice in its instructions to the jury. Because the court followed through on this point with instructions, we find no error in its denial of a mistrial based on counsel's exchanges with the expert witness.
As an additional basis for mistrial, CSX cites counsel's inquiries in directly examining Whittler about his post-accident conversations with CSX. Whittler testified that when he initially approached CSX about this claims, CSX told him, "Sue us." CSX immediately moved for mistrial after this testimony, and the jury was sent out. The court noted that the remark only served to elicit prejudice against CSX, and that this prejudicial effect certainly outweighed any possible relevancy of the remark to the issues. The court brought the jury back in and instructed it to disregard the answer. Each juror was polled as to his or her ability to disregard the comment. One juror stated that he could disregard the comment, but had a question as to whether Whittler was being "carried" by CSX. However, this juror then immediately affirmed that he could disregard the comment. The other jurors stated that they could also.
Whittler attempts to justify his counsel's questioning by citing to extensive prior questioning and argument by CSX to the effect that he was angry at CSX and refused to accept his own responsibility for causing the accident. He, for instance, cites to CSX's cross-examination of his psychiatrist on the defense mechanism of denial and projection.
In this situation, we again find no abuse of discretion by the trial court in concluding that the curative instruction and the juror polling were an adequate remedy in lieu of mistrial. The parties had obviously taken adverse positions with respect to the other's claims, and we cannot disagree with the trial court resolution of the matter.

INSTRUCTING THE JURY
Finally, CSX contends the trial court erred in failing to adopt the jury instructions it proffered, and in preferring to fashion a set based primarily on the Florida Standard Jury Instructions. Appellees point out CSX's failure to allege prejudice in this regard.
If jury instructions, viewed as a whole, fairly state the applicable law to the jury, the failure to give particular instructions will not be error. Kuba v. Leb, 464 So.2d 601 (Fla. 3d DCA 1985); Grimm v. Prudence Mutual Casualty Company, 243 So.2d 140 (Fla. 1971); Montgomery v. Stary, 84 So.2d 34 (Fla. 1955). Upon review of the record, we are satisfied that the trial court adequately charged the jury on each of the significant points included in the four omitted instructions proffered by CSX and cited on appeal.
In accordance with the above, we hereby affirm the judgments of the trial court.
GLICKSTEIN, C.J., and DOWNEY, ANSTEAD, HERSEY, DELL, GUNTHER, STONE, WARNER, POLEN, GARRETT and FARMER, JJ., concur.
LETTS, J., recused.
NOTES
[1] The court has considered this case en banc only with respect to the appeal of the city.