324 So.2d 662 (1975)
Raymond FARLEY, Appellant,
v.
STATE of Florida, Appellee.
Charles CURRIE, Appellant,
v.
STATE of Florida, Appellee.
Nos. 74-557, 74-558.
District Court of Appeal of Florida, Fourth District.
December 26, 1975.
Rehearing Denied January 28, 1976.
Richard L. Jorandby, Public Defender, and Leon St. John, Asst. Public Defender, West Palm Beach, for appellants.
Robert L. Shevin, Atty. Gen., Tallahassee, and Joel D. Rosenblatt, Asst. Atty. Gen., Miami, for appellee.
WALDEN, Chief Judge.
This is an appeal from a rape conviction.
Defendants argued they were denied speedy trial. We find that there were adequate facts in evidence to show that the speedy trial rule was not violated.
Defendants argued the trial court erred in permitting an expert witness, a doctor, to testify that it was his opinion that the alleged victim had been raped. We agree and reverse for a new trial.
The facts are such that the claims made by prosecutrix and defendants are equally credible. It is undisputed that the prosecutrix was drinking alone at two lounges in Fort Lauderdale; that she became intoxicated after an eight hour stay in the second lounge; that she left that lounge at about 10:30 p.m. with the two defendants, also intoxicated and strangers to her; and that they proceeded to a room in a Holiday Inn (next door to the lounge). The claims then become divergent.
The prosecutrix testified she was assaulted and raped, and that she then waited until the defendants were asleep before she sought help. She left the room about 12:00 p.m., seeking aid as she was badly beaten around the face. She first claimed she wished to bring charges of assault, not rape; subsequently she brought the later charge.
*663 One defendant testified the prosecutrix had willing intercourse with them, that they fell asleep, that the other defendant awoke to find her rifling his pants pockets, and that he then began to beat her. The testifying defendant said he then broke up the fight, took the prosecutrix to the bathroom to clean her up with a towel as she was bleeding profusely from the face, and then told her to leave, which she did.
The alleged victim's underwear, soiled with her type blood, was found in the bedroom. Defendants did not explain the presence of the underwear; the prosecutrix claimed the blood appeared on the underwear when the hand of one of the defendants, bloody from hitting her, was used to remove them from her. The underwear was not torn except for portions cut to take blood samples. There was no blood on the bed but there was a bloody towel dropped between the beds. The prosecutrix was examined by a doctor who testified to the presence of sperm in her vagina.
There was a crowd outside the room attracted by a commotion minutes before the prosecutrix emerged. This would be consistent with the claim that the beating took place at the end of the time period.
Both prosecutrix and defendants initially gave false names to the police; the defendants, when first confronted by police, denied all knowledge of the prosecutrix. In conclusion, there were numerous facts and explanations which meshed with the claims of either of the parties, there were circumstances that, though unexplained, could be interpreted as supporting the claims of either of the parties.
In the setting of this tangled skein of facts, the following testimony was elicited by the prosecutor from the witness doctor:
Q. "Now, as a result of your examination and from your experience, both practical and also medical experience, do you have an opinion as to Mrs. Ford's condition at that time?
* * * * * *
A. "Well, my opinion from the history and from the cursory examination and from finding the vagina loaded with sperm at the time, was that she had been raped."
This opinion by the doctor, that the alleged victim had been raped, was erroneously admitted into evidence.
The prosecutrix had been badly bruised about the face, but no trauma or bruises were present elsewhere. All the facts being as described, the doctor could not properly opine that the cause of the injuries was rape, but only that she had had intercourse, and had been beaten  a conclusion that would be permissible. In North v. State, 65 So.2d 77 (Fla. 1952), the following opinion was permitted:
"Because of the multiplicity, nature and distribution of various wounds on this body, I concluded that they were most consistent with the person having been assaulted, principally by blunt force, and that the method of assault is most consistent with strangulation." Id. at 87.
but the Court carefully noted:
"This question did not call for an answer from Dr. Mills as to whether or not there was a felonious assault or who made the assault. The question simply called for an opinion from this expert witness as to what caused the bruises and contusions upon and in the throat of the deceased." (Emphasis supplied.) Id.;

Johnson v. State, 314 So.2d 248 (1st DCA Fla. 1975).
Further, for the doctor to conclude the prosecutrix had been raped was to conclude that the defendants, who had admitted the beating of the prosecutrix, were guilty of a certain criminal act in connection with the beating. Such an *664 opinion is not permissible; Gibbs v. State, 193 So.2d 460 (2d DCA Fla. 1967):
"The opinion of a witness as to the guilt or innocence of an accused person is not admissible in evidence." Id. at 463.
See Coppolino v. State, 223 So.2d 68 (2d DCA Fla. 1968). We are very aware that in some cases this very same testimony might be simply harmless error, if error at all, and we limit our decision here strictly to the facts at hand.
In light of the very closely drawn issues, and the fact that the cause of the one party's injuries were subject to reasonable conflicting claims, and in view of the fact that defendants' motion to strike the opinion testimony was denied, we hold the admission of the opinion testimony was reversible error, and that the cause must be remanded for a new trial.
Reversed and remanded.
OWEN and DOWNEY, JJ., concur.