504 So.2d 495 (1987)
Alexander BLOODWORTH, Appellant,
v.
STATE of Florida, Appellee.
No. BL-333.
District Court of Appeal of Florida, First District.
March 24, 1987.
*496 Michael E. Allen, Public Defender, Kathleen Stover, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
NIMMONS, Judge.
The appellant was convicted of the life felony of sexual battery with the use of a deadly weapon under Section 794.011(3), Florida Statutes, and sentenced to life imprisonment pursuant to the recommended sentence under the sentencing guidelines. On this appeal he attacks both the conviction and sentence and raises several issues, two of which merit discussion.
Appellant asserts as reversible error the trial court's allowing over objection the examining physician, an expert in obstetrics and gynecology who had examined 150-200 purported rape victims, to express his opinion that the 29 year old female victim had recently engaged in nonconsensual intercourse.
Prior to his expression of the subject opinion, Dr. Pollock testified that, upon his examination of the victim two and one half hours after the alleged assault, he noted dirt and fresh minor scratches on her back and some erythema (redness) and swelling on her neck. Its origin would have most likely been within six hours of his examination. Dr. Pollock also described some microabrasions  or shallow tears which do not bleed  in the skin at the very bottom of the vagina. He opined that they would have been caused within twelve hours of the examination as they had not yet begun to heal. He said that the tears were consistent with penetration by a foreign object and that the trauma which he observed was consistent with unaroused, unlubricated intercourse and inconsistent with lubricated intercourse.
On cross-examination, Dr. Pollock admitted that the victim's pelvic symptomatology could be consistent with consensual intercourse with insufficient lubrication, but only under "very rare and selected circumstances." He also said that of the many women he has examined who have engaged in recent consensual sex  he examines many such women in his ob/gyn practice  he has never observed in such patients trauma like that of the subject victim.
*497 On redirect, the state elicited from Dr. Pollock, over objection, the subject opinion that the victim had engaged in recent nonconsensual intercourse. We are of the view that the trial court did not err in allowing this opinion testimony. See Section 90.703, Florida Statutes[1]; Ferradas v. State, 434 So.2d 24 (Fla. 3rd DCA 1983) (opinion that rape victim's injuries were consistent with forced sexual intercourse properly admitted); Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986) (opinion testimony of psychiatrist that victim of alleged lewd assault was suffering from a condition known as "post traumatic stress syndrome" properly admitted notwithstanding absence of any demonstrable evidence of sexual trauma).
We find Farley v. State, 324 So.2d 662 (Fla. 4th DCA 1975), relied upon by the appellant, distinguishable. Although the Fourth District found it reversible error to admit the doctor's opinion that the victim had been raped, the Farley court was careful to, as it said, "limit our decision here strictly to the facts at hand." Id. at 664. It was undisputed that the prosecutrix in Farley became intoxicated while drinking at a lounge and that she left the lounge with two strangers, also intoxicated, and proceeded to a motel room. The prosecutrix testified that she was assaulted and raped and waited until the two defendants were asleep before she left the room, her face badly beaten, seeking help. One of the defendants elected to testify. He said that the prosecutrix engaged in voluntary sex with both defendants, that they fell asleep, and that the other defendant awakened to find her rifling his pants pockets, and that he began to beat her. He said that her face was bleeding profusely, that he toweled her off and told her to leave.
The Farley court pointed out that "the facts are such that the claims made by the prosecutrix and defendants are equally credible," id. at 662, observing also that, although the prosecutrix had been badly bruised about the face, no evidence of trauma was present elsewhere on her body. Id. at 663. The court further stated:
We are very aware that in some cases this very same testimony might be simply harmless error, if error at all, and we limit our decision here strictly to the facts at hand.
Id. at 664.
The evidence in the case at bar is materially and substantially distinguishable from Farley. As earlier noted, there was evidence of trauma in and around the victim's genitalia. Further we do not have a situation, as in Farley, where the victim's version and the defendant's version were equally plausible.
The victim in the instant case, having worked a late shift at the Pic N'Save Store, was at the Main Street Restaurant in the early morning hours on the date of the offense. She testified that the defendant, who appeared to have been drinking, came in and sat at the counter next to her. She said that they spoke to each other and that his language was offensive, for which she admonished him. When she left the restaurant, she said they did not leave together but he followed close behind her. When she arrived in the vicinity of a church on Main Street, she said that the defendant grabbed her from behind, lifted her off the ground and took her to a wall near the church. She said that he threatened to kill her and had his hands around her neck choking her. He also displayed a sharp blade insisting that she touch it to see how sharp it was. After this, she was made to lie down and submit to the defendant's sexual demands, including forced intercourse.
Fortuitously, two police officers, who were in the area answering an unrelated call, came upon the scene and caught the defendant on top of the victim as he was still engaged in intercourse. Officer LaForte described the victim as hysterical and crying. He also testified that the victim's neck clearly bore what appeared to be fingerprint marks. LaForte also testified *498 that he recovered from the defendant's front pants pocket a "box cutter" with a sharp retractable razor blade. He said that the blade was in the exposed position.
In the face of such overwhelming evidence, this defendant engaged in a singularly unsuccessful attempt, through cross examination of the state's witnesses and presentation of witnesses of his own, to create an inference that the victim had consented to sex.[2]Farley is patently distinguishable.
Even were we to find that the trial court erred in allowing Dr. Pollock to opine that the victim had engaged in recent nonconsensual intercourse, such error would be harmless.
Appellant also attacks his sentence of life imprisonment. He says it is cruel and unusual punishment and therefore a violation of the Eighth Amendment. He erroneously relies upon Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), a proportionality case which is patently and materially distinguishable from ours. Basically, the Court in Solem held that a life sentence without parole for uttering a $100.00 bad check under a South Dakota recidivism statute based on six prior nonviolent convictions violates the Eighth Amendment. As stated by the Court in Solem:
The issue presented is whether the Eighth Amendment proscribes a life sentence without possibility of parole for a seventh nonviolent felony. (e.s.)
Id., 463 U.S. at 279, 103 S.Ct. at 3004, 77 L.Ed.2d at 642. It is apparent from a reading of the Solem opinion that the all-important factor which led the majority to find an Eighth Amendment violation was the fact that the offense for which the defendant was convicted, burglary, was characterized by the Court as a "nonviolent felony." By contrast, the offense committed by this appellant, sexual battery with the use of a deadly weapon, is one of the most violent and barbaric offenses known to our jurisprudence. Indeed, until a few years ago, it was a capital offense in Florida.
Moreover, the appellant is no newcomer to the criminal justice system. His sentencing guidelines scoresheet reflects no less than 28 prior criminal convictions  1 second degree felony, 7 third degree felonies, and 20 misdemeanors. Under the sentencing guidelines scoring mechanism, one can almost take judicial notice that it is unusual for an offender to "earn" a recommended sentence of life imprisonment under sentencing guidelines. See Fla.R.Cr.P. 3.988 (category 2). This defendant earned 56 points greater than the 583 points required for a recommended life sentence.
Appellant also contends that his life sentence denies him his constitutional right to equal protection under the law. He points to the fact that he has received a more severe sentence than a person convicted of a capital felony who does not receive the death penalty. Under present law, a capital crime felon who does not receive the death penalty receives a life sentence but is eligible for parole consideration after serving 25 years.[3] On the other hand, a person convicted of a life felony is punishable by either life imprisonment or a term of years not exceeding 40. See Section 775.082(3)(a), Florida Statutes. And, so the appellant asserts, since the trial court sentenced him to life imprisonment instead of a term of years, and since life felonies are not exempt from the sentencing guidelines and his sentence is therefore not subject to parole, he is denied equal protection. We disagree.
In order to comply with equal protection requirements, a statute must treat all people within a class the same, and the division into classes must bear some reasonable relationship to a legitimate state objective. Renau v. State, 436 So.2d 268 (Fla. 1st DCA 1983). The Equal Protection clause admits to a wide discretion in the exercise by the state of its power to classify in the *499 promulgation of police laws, and even though application of such laws may result in some inequality, the law will be sustained where there is some reasonable basis for the classification. Hamilton v. State, 366 So.2d 8, 10 (Fla. 1978) (quoting from Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1910)).
The legislature has chosen to denominate certain crimes as capital felonies and others as life felonies. With respect to the capital class, the legislature has essentially provided that if the capital offense is not so severe as to warrant the death penalty, then the penalty must be life imprisonment with the provision that the offender may be eligible for parole, but only after serving a minimum of 25 years. With respect to the life felony class, the legislature has, in effect, provided that if the life felony is not so severe as to warrant a life sentence (without eligibility for parole), then the penalty will be a term of years no greater than 40 years (again without eligibility for parole).
Appellant has failed to establish that there is no rational basis for such classifications. Moreover, it is clear that all persons falling within the life felony class are subject to the same range of penalties; so also with respect to those in the capital felony class.
We have examined the remaining points urged by appellant and find them to be without merit.
AFFIRMED.
WENTWORTH and WIGGINTON, JJ., concur.
NOTES
[1] Section 90.703 provides:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.
[2] The defendant did not testify and he produced no witness who observed the incident.
[3] Capital felonies are exempt from the operation of sentencing guidelines. Section 921.001(4)(a), Florida Statutes; Committee Note, Fla.R.Cr.P. 3.701(c).