679 So.2d 805 (1996)
Darryl HENDERSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 95-1421.
District Court of Appeal of Florida, Third District.
July 31, 1996.
Opinion Certifying Question September 18, 1996.
*806 Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Consuelo Maingot and Paulette R. Taylor, Assistant Attorneys General, for appellee.
Before COPE, LEVY and FLETCHER, JJ.
FLETCHER, Judge.
Defendant Darryl Henderson appeals his conviction for two counts of robbery with a firearm, contending that the trial court erred in (1) denying his motion for judgment of acquittal as, he claims, he unknowingly was the driver of the get-away car; and (2) conducting juror challenges at sidebar without his being present. We reject both contentions and affirm his convictions.

1.
Henderson argues that the trial court erred in not granting his motion for judgment of acquittal as the State's evidence did not prove beyond a reasonable doubt and inconsistent with any reasonable hypothesis of innocence, his intent to participate in the perpetration of the crime. Henderson's position is based on his role in events that made him the driver of the automobile in which he and the two persons who actually committed the robbery fled the crime scene.
While we must agree with Henderson that the State was required to provide evidence inconsistent with any reasonable hypothesis of innocence, we emphasize that the State was not required to exclude any unreasonable hypothesis. Our review of the facts in this case reveals that Henderson's stated reason for having the two passengers in his car, in light of the evidence, created a legitimate question for the jury to determine.
Specifically, the victims of the robbery were driving to their home, having been out on business. They pulled into their driveway some forty to fifty feet off their street and opened their car doors, at which time two men (one with a firearm) immediately hurried down the driveway and robbed the victims. The two robbers then immediately turned around and, with their booty, ran directly to an older model Cadillac automobile waiting at the end of the driveway, in the street, with the engine running. Arriving at the automobile, the two men opened the doors and got inside. The car then drove off, but not before one of the victims was able to observe Henderson as the driver.
It should be noted that the testimony reflects that the entire incident took only a few minutes. ("Two minutes," according to defense counsel in his closing argument.) It should also be noted that when the victims drove their vehicle into their driveway, neither Henderson's Cadillac nor Henderson and his passengers were on the scene. Finally, when Henderson was stopped by the *807 police, the explanation he gave was that he was simply driving his two passengers to the Metrorail station (four or five miles distant).
From the foregoing facts, all in evidence, several indisputable inferences follow: (1) The Cadillac, with Henderson and his companions, arrived on the scene almost simultaneously with the victims (as the speed with which the two robbers appeared and then arrived at the victim's car reveals). (2) Henderson's car and passengers were following the victims (as the victims observed neither Henderson's car, nor Henderson and his passengers, through the front window of their car as they arrived and pulled into the driveway). (3) Henderson deliberately stopped and let his passengers exit at the end of the victims' driveway, making it possible for the robberies to be committed. (4) Henderson's statement that he was only taking his passengers to the Metrorail station is inconsistent with his having stopped four or five miles from the station to let his passengers exit the car at the victims' home. (5) The sheer nanosecond timing of the events leaves no room for any explanation but a planned event.
The foregoing facts and inferences are consistent with a reasonable hypothesis of Henderson's guilt. They are inconsistent with any reasonable hypothesis of ignorance on Henderson's part, including Henderson's stated theory of the events, i.e., that he was merely taking his passengers to a Metrorail station. Accordingly, the trial court correctly denied Henderson's motion for judgment of acquittal and allowed the case to go to the jury. State v. Law, 559 So.2d 187 (Fla.1989); Toole v. State, 472 So.2d 1174 (Fla.1985); State v. Allen, 335 So.2d 823 (Fla.1976). As the Court held in State v. Law:
"The state is not required to `rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events."
559 So.2d at 189 (Footnote and citation omitted).
We have carefully reviewed the cases brought to our attention by Henderson. In Stuckey v. State, 414 So.2d 1160 (Fla. 3d DCA 1982), this Court noted that the State had failed to present evidence sufficient to exclude the defendant's explanation of events, whereas such was accomplished here. In A.Y.G. v. State, 414 So.2d 1158 (Fla. 3d DCA 1982), this Court concluded that evidence of the defendant's presence at the scene and her driving the getaway car at the request of the perpetrator did not refute the reasonable inference that she did not know of the crime until after it was committed. Here, the method of arrival of the perpetrators on the scene, the timing, and the poised getaway car, with Henderson behind the wheel, sufficiently refute a lack of knowledge of what was about to occur and refute lack of the requisite intent. In J.H. v. State, 370 So.2d 1219 (Fla. 3d DCA 1979), cert. denied, 379 So.2d 209 (Fla.1980), the defendant was merely present at the scene and fled on foot after his companion snatched a purse. The defendant volunteered when apprehended that he had done nothing wrong, but that his companion grabbed the purse and they both ran. As there was no other evidence than this, we concluded that the State had not excluded lack of knowledge and thus intent. In Douglas v. State, 214 So.2d 653 (Fla. 3d DCA 1968), the defendant was a passenger in a car driven by another person, who stopped the vehicle, left the defendant seated in the car, entered a house and robbed the victim. On exiting, the perpetrator asked the defendant to drive, which he did. We concluded that the evidence was insufficient to prove aiding and abetting. The facts here differ substantially as seen. In E.H. v. State, 452 So.2d 664 (Fla. 3d DCA 1984), the defendant drove one of the robbers to a bar (the crime scene) and then drove both robbers home afterwards. She subsequently testified (uncontradicted) that she had no previous knowledge of the crime (which this Court noted was corroborated by the fact that she did not attempt to escape).
The facts here are much stronger than those of the cited cases. Here, there are added elements which properly led to the jury's conclusion that Henderson knew exactly what was occurring and that he was an active participant in the robberies, aiding and abetting his passengers as a wheelman. *808 These additional elements are legally sufficient, as were the additional facts in Lincoln v. State, 459 So.2d 1030 (Fla.1984), to show knowledge and intent. Although the evidence of Henderson's intent was circumstantial (the jury could not poke around in his gray matter for clues), there was sufficient competent evidence inconsistent with Henderson's theory of events to deny the acquittal motion. It thus became the jury's duty to determine whether the evidence was sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. This duty the jury carried out.

2.
Henderson's second argument, that the trial court erred in conducting jury challenges at sidebar in the absence of the defendant, is based upon Coney v. State, 653 So.2d 1009 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 315, 133 L.Ed.2d 218 (1995). Indeed, Coney does require the defendant's presence at sidebar to assist in making peremptory challenges, or his specific waiver of that right, or his ratification of the peremptory strikes. In Henderson's case, we are not certain that the record sufficiently reflects his absence from the sidebar. Assuming, however, that he was absent, we find that Coney is inapplicable as its application is prospective only, 653 So.2d at 1013, and Henderson's trial took place prior to the effective date of Coney.[1]See Ogden v. State, 658 So.2d 621 (Fla. 3d DCA), rev. denied, 666 So.2d 144 (Fla.1995).
Affirmed.

ON MOTION FOR CERTIFICATION
PER CURIAM.
On motion of the appellant, we certify that the opinion issued in this case on July 31, 1996 passes upon a question of great public importance so as to permit further review by the Supreme Court of Florida. Fla.R.App.P. 9.030(a)(2)(A)(v). We certify the following question to the Florida Supreme Court:
DOES THE DECISION IN CONEY v. STATE, 653 So.2d 1009 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 315, 133 L.Ed.2d 218 (1995) APPLY TO CASES IN WHICH THE JURY SELECTION PROCESS TOOK PLACE AND THE ENTIRE TRIAL CONCLUDED DURING THE PERIOD OF TIME AFTER THE ISSUANCE OF THE CONEY OPINION BUT PRIOR TO THE TIME THAT CONEY BECAME FINAL BY THE DISPOSITION OF ALL MOTIONS FOR REHEARING DIRECTED TO THAT OPINION?
NOTES
[1] Coney was pending on rehearing at the time of Henderson's trial. Opinions of appellate courts are not final until the time for rehearing and the disposition thereof, if any, has run. Caldwell v. State, 232 So.2d 427 (Fla. 1st DCA 1970).