734 So.2d 450 (1999)
Michael MITCHELL, Appellant,
v.
STATE of Florida, Appellee.
No. 97-3230.
District Court of Appeal of Florida, Fourth District.
May 5, 1999.
*451 Gary S. Israel of Gary S. Israel, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for appellee.
STONE, C.J.
We affirm Mitchell's conviction and sentence for two counts of attempted first-degree murder with a firearm and one count of attempted robbery with a firearm. The victims, Brinks armored car guards, were shot when the Brinks armored car was robbed while parked in a supermarket parking lot.
As one guard, Arruda, was on his way out of the market after picking up money, and the driver, Garrick, was inside the vehicle, a four door black car shot across the parking lot and parked in front of the supermarket. A large man wearing a black ski mask and holding an assault rifle immediately exited the rear driver's side door. At the same time, another person holding a gun and wearing a light colored ski mask exited the front passenger's door and came around the front of the car. The first man began firing continuous shots as he walked towards the Brinks car. He entered the back of the car, as the second man stood off to the side.
From the armored car, Garrick saw Arruda open the door of the car and hesitate for a moment. Garrick then heard a pop, and saw Arruda go down. Arruda was shot in the head. One assailant, holding a rifle, entered the back of the truck. The man shot the bulletproof glass, shattering it. Both Garrick and the man then attempted to get their guns through the gunport in the bulletproof partition. The man shot Garrick four times.
The second man entered the truck and they ripped the plastic off the money in the cargo department. Garrick then shot the first man in the leg. After the shooting, the two men hurried to their car and fled the scene in a dark colored Honda.
A witness followed the fleeing Honda and observed it in a school parking lot. Another witness observed the two men in the Honda pull into the lot at a high speed. Seconds later, a blue two-tone sports utility vehicle quickly pulled into the same path, and immediately turned and pulled up to the rear of the Honda, as if ready to leave the lot. A man carrying a duffel bag and wearing a black jogging suit exited the Honda. The man, who the witness later identified as Chestley Higgins, appeared to be in a hurry and did not appear to be limping. Higgins got into the passenger side of the SUV, a Suburban. The Honda was then intentionally set on fire. A sheriffs deputy, Tranchant, saw another wearing dark clothes run from the burning Honda and get into the "driver's side ... passenger door" of the SUV. Police later found a fingerprint belonging to Michael Mitchell on the inside of the rear driver's side door below the handle. They also found a fingerprint belonging to Higgins on the exterior of the front passenger door above the handle.
Tranchant followed the vehicle. At one point, the person in the passenger seat rolled the window down and pointed a rifle *452 at him. Tranchant saw three people inside. The SUV accelerated and turned into a residential neighborhood that had only one entrance and exit road.
The SUV, owned by Mitchell, was later found parked between two houses. It had also been intentionally set on fire. Inside the vehicles, deputies later found ski masks, a wig, gloves, hats, a sweatshirt, two duffel bags, a dent puller, a lock punch, a long black jacket, a cowboy hat, and a .40 caliber semi-automatic pistol and ammunition. The pistol belonged to Michael Mitchell.
Residents of the neighborhood observed the three men running and crawling through their yards. One witness observed Higgins crawling through some bushes, while another witness saw Mitchell crawling on the ground of his yard. The police eventually apprehended Mitchell and Higgins and found weapons, including an AK-47, a rifle, and a bullet proof vest in the bushes. Some discarded clothing was also found nearby. Myers was also found hiding in the bushes.
There was testimony that Mitchell was driving his SUV earlier that morning, that Higgins and Mitchell are both Jamaican, both live in Clewiston, and that all three are good friends. There was further testimony that Myers is related to Mitchell. Myers told the police in a statement that on the morning of the robbery he drove Mitchell's SUV to the elementary school. Myers and Mitchell were tried as co-defendants. Accordingly, the court instructed the jury that it could not consider this statement with respect to Mitchell's case.
Mitchell initially argues that the trial court erred by admitting the testimony of the security guard, Arruda, because it was not relevant and the prejudicial impact outweighed any probative value. Mitchell points to Arruda's physical condition as being highly inflammatory. Arruda was severely impaired by the shooting and apparently could not speak. At trial, the prosecutor explained to the jury that the only way Arruda could communicate was by way of a board with the alphabet which allowed him to spell out letters. His testimony at trial essentially consisted of answering a simple line of questions establishing his identity, employment on the morning of the robbery, and his recollection of events leading up to the robbery, including speaking with workers in the market, leaving the store, being signaled that it was "all clear," and, most significantly, that the gunman said nothing before the shooting.
Before Arruda testified, the defense objected stating, "It's our position his testimony should not be allowed because it's not relevant because based on the deposition I furnished to the court, he doesn't remember anything." The court responded, "Okay, maybe his memory has improved." The court further stated, "All right, we'll see what he has to say." Arruda then testified. At no time did the defense renew its objection or move to strike, despite the court's tentative response to the initial objection.
Initially, we conclude that given the nature of the trial court's ruling, the objection is waived by failing to renew it in the course of the testimony. Further, at no time did the defense argue to the trial court that even if probative, the testimony should be excluded due to its prejudicial impact. Therefore, as to this point, any error was not preserved. See Tillman v. State, 471 So.2d 32 (Fla.1985).
Even if the relevancy objection was preserved by the initial objection, Arruda's testimony regarding his recollection of what occurred prior to the incident was relevant to establish that the shooting was premeditated, and was not an accident occurring during a holdup. See Alcott v. State, 23 Fla. L. Weekly D1592, 728 So.2d 1173 (Fla. 4th DCA 1998), rev. denied, 727 So.2d 902 (Fla.1999). The fact that the assailant did not speak to him, warning him of danger before shooting him, is probative that the assailants intended to shoot to kill as part of the robbery. Additionally, *453 Arruda's testimony, combined with the testimony from other state witnesses, that one assailant began firing seconds after he exited the car and fired continuously as he approached the truck and evidence that Arruda was shot in the head, is consistent with a finding of premeditation.
Mitchell also argues that the trial court erred in denying his motion for judgment of acquittal. Notwithstanding the circumstantial nature of the evidence, with respect to which participant was the driver and which were the assailants, the record contains sufficient proof to allow the case to go to the jury. Defense counsel's only theory of the case is apparently that Mitchell might have been the driver and might have been kidnapped by the other two perpetrators. Although the state must introduce evidence inconsistent with the defendant's theory of events, it need not rebut every possible variation of events which could be inferred from the defendant's hypothesis of innocence. See State v. Law, 559 So.2d 187 (Fla.1989). Whether the evidence actually fails to exclude all reasonable hypotheses of innocence is for the jury to decide. See Barwick v. State, 660 So.2d 685 (Fla.1995).
In Henderson v. State, 679 So.2d 805 (Fla. 3d DCA 1996), the court upheld the defendant's conviction for two counts of robbery with a firearm. The evidence showed that the victims were robbed as they pulled into their driveway and opened their car doors. After the robbery, the assailants ran directly to a car waiting at the end of the driveway with the engine running, driven by Henderson. Later, Henderson explained to the police that he had merely been driving the two men to the Metrorail station. The court stated:
From the foregoing facts, all in evidence, several indisputable inferences follow: (1) The Cadillac, with Henderson and his companions, arrived on the scene almost simultaneously with the victims (as the speed with which the two robbers appeared and then arrived at the victim's car reveals). (2) Henderson's car and passengers were following the victims (as the victims observed neither Henderson's car, nor Henderson and his passengers, through the front window of their car as they arrived and pulled into the driveway). (3) Henderson deliberately stopped and let his passengers exit at the end of the victims' driveway, making it possible for the robberies to be committed. (4) Henderson's statement that he was only taking his passengers to the Metrorail station is inconsistent with his having stopped four or five miles from the station to let his passengers exit the car at the victims' home. (5) The sheer nanosecond timing of the events leaves no room for any explanation but a planned event.
The foregoing facts and inferences are consistent with a reasonable hypothesis of Henderson's guilt. They are inconsistent with any reasonable hypothesis of ignorance on Henderson's part, including Henderson's stated theory of the events, i.e., that he was merely taking his passengers to a Metrorail station.
Id. at 807.
Here, there is evidence inconsistent with counsel's theory that Mitchell was kidnapped by the assailants and forced to drive to the residential neighborhood. The testimony establishes that the SUV arrived at the elementary school parking lot, a remote location from the robbery scene, only seconds after the dark Honda arrived. The SUV pulled up next to the Honda and waited long enough for the two men to exit the Honda, set it on fire, and enter two different doors of the SUV. Even accepting the argument that Mitchell, and not Myers, was the driver of the SUV, the manner in which the SUV pulled in, prepared to leave, and left, as well as Mitchell's conduct after abandoning the SUV, is inconsistent with Mitchell's theory that he had been kidnapped. Mitchell's theory is further discredited by the fact that at the time he was arrested, Mitchell was dressed in all black and one of his guns was in the SUV along with ski masks and other equipment. Finally, the number of men observed is inconsistent with a *454 theory that anyone else was in the SUV with Mitchell to force him to participate in the getaway according to the obvious plan.
We recognize that mere presence at the scene, and even suspicious behavior after the fact, is not enough to sustain a conviction. Although Myers actually admitted to driving the SUV, Myers did not testify at trial, and his statement to the police is not admissible against Mitchell. Thus, the court cannot consider it here. However, from the evidence admissible solely against Mitchell, there is substantial competent proof from which the jury could reasonably infer Mitchell's involvement in the crime either as the wheel man or as one of the gunmen. See State v. Law, 559 So.2d at 189; Jones v. State, 691 So.2d 33, 34 (Fla. 4th DCA 1997); Hampton v. State, 549 So.2d 1059, 1060-61 (Fla. 4th DCA 1989). Therefore, we conclude that the totality of the evidence discussed above is sufficient to justify the denial of a motion for judgment of acquittal. Compare Lincoln v. State, 459 So.2d 1030, 1031 (Fla. 1984) and Henderson, 679 So.2d at 807, with West v. State, 585 So.2d 439, 441-42 (Fla. 4th DCA 1991)(appellant's conduct in simply driving the perpetrator to the scene was insufficient to sustain a conviction).
As to the other issues raised, we also find no error or abuse of discretion.
WARNER and GROSS, JJ., concur.