WOLF, J.
 

 Appellant challenges his two convictions for failure to report a temporary residence in violation of Florida’s sexual offender registration statute and his subsequent enhanced sentence as a habitual violent felony offender (HVFO) to twenty years’ incarceration. Appellant raises four issues on appeal. Specifically, appellant asserts (I) the trial court erred in denying his motion for judgment of acquittal; (II) the trial court erred in admitting certain testimony as relevant; (III) his convictions for two failures to properly report as a sexual offender constituted a double jeopardy violation; and (IV) his sentence constituted cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and article I, section 17 of the Florida Constitution. We affirm as to all issues.
 

 Appellant is a registered sex offender. As such, appellant is required to register any residences with the local sheriffs office on his birthday and every third month thereafter.
 
 See
 
 § 943.0435(14)(a)-(c), Fla. Stat. (2007). Appellant was arrested and charged with two counts of failure to report a temporary residence,
 
 [1]
 
 in violation of section 943.0435(14), Florida Statutes (2007). The alleged temporary residence was an apartment leased by appellant’s pregnant girlfriend. The State alleged appellant failed to report this temporary address on July 25, 2008, and again on October 28, 2008. Before trial, the State filed its Notice of Intent to Classify Defendant as a HVFO pursuant to section 775.084, Florida Statutes (2007).
 

 At trial, numerous witnesses testified that around the relevant dates, they regularly saw appellant at his girlfriend’s apartment complex. Two witnesses testified appellant told them directly that he lived in the apartment complex. Witnesses also testified that appellant interacted with them, engaged them in small talk and Invited them to various social engagements at “his apartment.” Also, witnesses testified they regularly saw appellant’s truck in the apartment complex parking lot, both during the day and late at night, and saw appellant coming and going from one of the apartments.
 

 Appellant testified prior to his arrest, he was living with his mother at the address he provided on his sexual offender registration forms. He testified that he visited the apartment complex regularly to help
 
 *982
 
 take care of his pregnant girlfriend, but did not live there and never spent the night. He testified that he would often leave his truck in the apartment complex parking lot and take his girlfriend’s car to work and to run errands because her car got better gas mileage than his truck. He testified when his job required him to go out of state, he would leave his truck in the apartment complex parking lot.
 

 After both the close of the State’s case and his own testimony, appellant moved for a judgment of acquittal. The trial court denied the motion. The jury found appellant guilty on both counts as charged. Appellant was sentenced as a HVFO to two, ten-year consecutive terms, for a total of twenty years’ incarceration.
 

 First, appellant asserts the trial court erred in denying his motion for judgment of acquittal. Specifically, appellant contends the State’s evidence was insufficient to exclude his reasonable hypothesis of innocence, that he visited the apartment complex often to see his pregnant girlfriend but did not reside there.
 

 A trial court’s denial of a motion for judgment of acquittal is reviewed de novo.
 
 Reynolds v. State,
 
 934 So.2d 1128, 1145 (Fla.2006). When a case is based entirely on circumstantial evidence, a special standard of review applies which requires that the circumstantial evidence be inconsistent with any reasonable hypothesis of innocence.
 
 State v. Law,
 
 559 So.2d 187, 188 (Fla.1989). “The state is not required to ‘rebut conclusively every possible variation’ of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant’s theory of events.”
 
 Darling v. State,
 
 808 So.2d 145, 156 (Fla.2002) (citation omitted).
 

 Despite appellant’s contention to the contrary, this was not a case based solely on circumstantial evidence. There was direct evidence that appellant lived at the apartment complex, namely, the testimony by witnesses who lived at the apartment complex that appellant told them directly that he lived there.
 
 See Sylvis v. State,
 
 916 So.2d 915, 918 (Fla. 5th DCA 2005) (stating that a defendant’s admission is direct evidence). This direct evidence was buttressed by circumstantial evidence that appellant and his truck were seen regularly around the apartment complex by numerous apartment residents. Thus, we find the trial court did not err in denying appellant’s motion for judgment of acquittal.
 

 Second, appellant asserts the trial court admitted the irrelevant testimony of three witnesses contrary to section 90.401, Florida Statutes (2008). We find the testimony of two of these witnesses to be clearly relevant and, as such, we will not address their testimony. However, the testimony of the third witness, Amanda Emerson, requires further discussion. When Emerson was asked whether appellant had ever come to her apartment, the following discussion transpired:
 

 A. Yes. Yes, he came to my door. Knocked on my door and I opened it and he asked me how I was doing and asked me if the guy that helped me — if one of the guys that helped me move in was my boyfriend and I said, yes.
 

 Q. Was it?
 

 A. No.
 

 Q. Okay.
 

 A.
 
 And he told me how beautiful I was and if I ever wanted to go out one time
 
 —
 
 [2]
 

 
 *983
 
 [DEFENSE]: Objection.
 

 A. — and I just let him know—
 

 [DEFENSE]: — Your Honor, relevancy.
 

 THE COURT: I’ll overrule it, but you need to reign [sic] it in.
 

 Q. So he just asked you out? Was that the extent of the conversation?
 

 A. Yeah, pretty much. He just asked me out. I kind of cut it short and that was it.
 

 (Emphasis added). Appellant contends that references to his attempt to ask Emerson out were irrelevant. We disagree because the evidence tended to show that appellant lived at the apartment complex. Specifically, the fact that appellant had the ability to find out where Emerson lived and had an opinion on her physical beauty made it more likely that appellant lived at the apartment complex because access to the complex was secured and resident keys were necessary for entry.
 

 Furthermore, even if admitting the above portion of Emerson’s testimony was error, any error was undoubtedly harmless. The standard for harmless error analysis was set forth in
 
 State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986):
 

 The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of
 
 did not contribute to the verdict
 
 or, alternatively stated, that there is
 
 no reasonable possibility that the error contributed to the conviction.
 
 Application of the test requires ... examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
 

 [[Image here]]
 

 The test must be conscientiously applied and the reasoning of the court set forth for the guidance of all concerned and for the benefit of further appellate review. The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence.
 
 The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict.
 
 The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
 

 Id.
 
 at 1138-39 (citations omitted) (emphasis added). Any alleged error here was harmless for several reasons. First, there was testimony by two witnesses that appellant told them that he lived at the apartment complex. Second, given the nature of the charges against appellant, the jury was already aware that he was a convicted sex offender. Third, this statement was extremely brief.
 
 See generally Eaglin v. State,
 
 19 So.3d 935, 947 (Fla.2009) (stating that a brief statement about defendant’s lack of remorse constituted harmless error). Fourth, appellant did not
 
 *984
 
 object to a similar statement by another witness, Marcella Watson, and thus the jury was previously informed of appellant’s attempts to ask out a female resident. As such, Emerson’s testimony was cumulative.
 
 See State v. Schopp,
 
 653 So.2d 1016, 1019 (Fla.1995) (approving cumulative evidence as a factor weighing in favor of harmless error). Therefore, even if it were error to admit the above portion of Emerson’s testimony, we find there was not a reasonable possibility that it affected the verdict.
 

 Third, appellant asserts that his convictions for two failures to report a temporary residence constituted a double jeopardy violation. In light of our recent decision in
 
 Bostic v. State,
 
 60 So.3d 535 (Fla. 1st DCA 2011), we find this assertion to be without merit.
 

 Last, appellant asserts that his sentence of two consecutive ten-year terms for failure to report a temporary residence constituted cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and article I, section 17 of the Florida Constitution. “[M]ixed questions of law and fact that ultimately determine constitutional rights should be reviewed by appellate courts using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue.”
 
 Hilton v. State,
 
 961 So.2d 284, 293 (Fla.2007) (citation omitted). However, when considering Eighth Amendment issues,
 
 [3]
 
 appellate courts must yield “substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishment for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.”
 
 Solem v. Helm,
 
 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
 

 “The Eighth Amendment to the United States Constitution ... [has] historically provided protection relative to the mode and method of punishment, not the length of incarceration.”
 
 Hall v. State,
 
 823 So.2d 757, 760 (Fla.2002);
 
 see also Harmelin v. Michigan,
 
 501 U.S. 957, 979, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Florida courts have been reluctant to declare a prison sentence unconstitutional because of its length.
 
 Adaway,
 
 902 So.2d at 748. The Florida Supreme Court has held that in order for a prison sentence to constitute cruel and unusual punishment solely because of its length, the sentence must be
 
 grossly
 
 disproportionate to the crime.
 
 Adaway,
 
 902 So.2d at 750.
 

 A cruel and unusual punishment analysis consists of an examination of three objective factors.
 
 Solem,
 
 463 U.S. at 292, 103 S.Ct. 3001. First, a court must consider the “gravity of the offense and the harshness of the penalty.”
 
 Id.
 
 Second, a court may examine “the sentences imposed on other criminals in the same jurisdiction.”
 
 Id.
 
 Third, a court may examine “the sentences imposed for commission of the same crime in other jurisdictions.”
 
 Id.
 
 For the following reasons, we find that appellant’s sentence was not cruel and unusual.
 

 1. Gravity of the Offense/Harshness of the Penalty
 

 a. The Triggering Offense
 

 With the factors of
 
 Solem
 
 in mind, we begin our assessment of the gravity of appellant’s crime, failure to report a tem
 
 *985
 
 porary residence in violation of section 943.0435(14). The express legislative intent of Florida’s sexual offender reporting requirements is set forth in chapter 2000-207, section 2, Laws of Florida, which provides:
 

 Legislative findings. — The Legislature finds that sexual offenders ... often pose a high risk of engaging in sexual offenses, even after being released from incarceration or commitment,' and that protection of the public from sexual offenders is a paramount government interest-
 
 Releasing information concerning sexual offenders to law enforcement agencies
 
 and to persons who request such information, and the release of such information to the public by a law enforcement agency or public agency,
 
 will further the governmental interests of public safety.
 
 The designation of a person as a sexual offender is not a sentence or a punishment, but is simply the status of the offender which is the result of a conviction for having committed certain crimes.
 

 (Emphasis added). Although appellant’s triggering offense was failing to report a temporary address (which is a non-violent crime), the legislative intent indicates that this reporting requirement is not a mere technicality. Rather, Florida has a real and legitimate interest in knowing where a sexual offender is residing, even if the residence is only temporary, because of the real risk that sexual offenders pose to the public and the need for law enforcement officials to monitor them. The temporary reporting requirement is important because it prevents sexual offenders from circumventing the statute by providing law enforcement with one address while they actually reside at another.
 
 Cf. State v. Wardell,
 
 329 Mont. 9, 122 P.3d 443 (2005) (stating that sexual offense crimes are of the type that require the State to know the location of the offender even after the offender is released from jail). Thus, due to the risk that sexual offenders pose to the public even after released from prison, appellant’s failure to properly register was a non-trivial offense.
 

 b. HVFO Status/Underlying Offenses
 

 Appellant is also a HVFO, and as such the Legislature may punish appellant more severely than it punishes a first time offender.
 
 See
 
 § 775.084, Fla. Stat. (2008);
 
 see also Ewing v. California,
 
 538 U.S. 11, 24-26, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003). The express legislative intent of Florida’s HVFO statute is set forth in section 775.0841, Florida Statutes (2008), which provides:
 

 The Legislature finds a substantial and disproportionate number of serious crimes are committed in Florida by a relatively small number of repeat and violent felony offenders, commonly known as career criminals. The Legislature further finds that priority should be given to the investigation, apprehension, and prosecution of career criminals in the use of law enforcement resources and to the incarceration of career criminals in the use of available prison space. The Legislature intends to initiate and support increased efforts by state and local law enforcement agencies and state attorneys’ offices to investigate, apprehend, and prosecute career criminals and
 
 to incarcerate them for extended terms;
 
 and, in the case of violent career criminals, such extended terms must include substantial mandatory minimum terms of imprisonment.
 

 (Emphasis added). In enacting the HVFO statute, the legislature recognized that those who commit serious crimes often repeat those crimes. By mandating increased penalties, the HVFO statute seeks both to protect the public from these vio
 
 *986
 
 lent offenders and presumably attempts to deter future offenders. Given appellant’s HVFO status, the gravity of his triggering crime of failure to report a temporary residence was increased, and thus his sentence was not grossly disproportionate.
 
 See Nelson v. State,
 
 811 So.2d 761, 763 (Fla. 4th DCA 2002) (finding “10/20/Life” enhancement statute was not, on its face, cruel and unusual);
 
 see also Hale v. State,
 
 630 So.2d 521, 526 (Fla.1993) (reiterating the principle that sentence length is a matter of legislative prerogative);
 
 Vucinich v. State,
 
 776 So.2d 995, 996 (Fla. 5th DCA 2001) (finding a ten-year sentence for habitual felony offender driving did not constitute cruel and unusual punishment).
 

 2. Intrajurisdictional Comparison
 

 After a thorough search, we can find no Florida case law exactly on point. While there are numerous cases involving a defendant failing to comply with the sexual offender registration requirements, we can find no Florida case upholding or reversing a sentence of twenty years for failure to register a temporary address where the defendant is a HVFO. However, we have stated in dicta that
 
 Solem
 
 does not apply in cases involving prior violent felonies.
 
 See Bloodworth v. State,
 
 504 So.2d 495, 498 (Fla. 1st DCA 1987).
 

 Appellant relies on
 
 Solem,
 
 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637, for the proposition that his twenty-year sentence constituted cruel and unusual punishment.
 
 [4]
 
 In
 
 Solem,
 
 the defendant was sentenced to life imprisonment without parole for writing a “no account” check for $100 under a South Dakota recidivism statute.
 
 Id.
 
 He had previously been convicted of six nonviolent felonies, including convictions for third-degree burglary, obtaining money under false pretenses, grand larceny, and a third-offense driving while intoxicated.
 
 Id.
 
 at 279-80, 103 S.Ct. 3001. The U.S. Supreme Court reversed, stating “[the defendant’s] crime was one of the most passive felonies a person could commit. It involved neither violence nor threat of violence to any person.”
 
 Id.
 
 at 296, 103 S.Ct. 3001 (citation omitted). Additionally, “[a]ll [of the defendant’s prior crimes] were nonviolent and none was a crime against a person.”
 
 Id.
 
 at 297,103 S.Ct. 3001.
 

 Appellant contends that because his crime of not reporting his temporary residence was passive and nonviolent and his sentence was excessively long,
 
 Solem
 
 should apply. However, as noted above, in
 
 Bloodworth
 
 this court stated that the all-important factor that made the sentence cruel and unusual in
 
 Solem
 
 was that all of the defendant’s prior convictions were
 
 non-violent.
 
 504 So.2d at 498. In the instant case, all of appellant’s prior convictions were
 
 violent
 
 crimes, including two counts of sexual battery, armed kidnapping, armed robbery, and armed burglary. In
 
 Long v. State,
 
 the Fifth District reiterated this distinction mentioned in
 
 Blood-worth,
 
 stating,
 
 “Solem
 
 applie[s] only to non-violent felonies.” 558 So.2d 1091, 1092 (Fla. 5th DCA 1990). Although the triggering crime in the instant case was nonviolent and did not involve harm to any particular individual, appellant does not point to any authority suggesting the particular facts of his case mandate a finding of cruel and unusual punishment, nor does appellant contend that his sentence fell outside of the statutory guidelines. Thus,
 
 Solem
 
 does not apply to the instant case.
 

 3. Interjurisdictional Comparison
 

 Other jurisdictions are split on whether long (i.e., twenty-year) sentences enhanced
 
 *987
 
 by habitual felony offender statutes for failure to comply with sexual offender registration requirements constitute cruel and unusual punishment.
 
 See People v. Nichols,
 
 176 Cal.App.4th 428, 97 Cal.Rptr.3d 702, 706 (2009) (holding a sentence of twenty-five years to life in prison did not constitute cruel and unusual punishment where a defendant failed to register as a sexual offender when he moved out of town and was in violation of a “three strikes law”);
 
 State v. Wardell,
 
 329 Mont. 9, 122 P.3d 443 (2005) (holding a sentence of twenty-five years with twenty years suspended did not constitute cruel and unusual punishment);
 
 Thompson v. State,
 
 No. 2-02-318-CR, 2003 WL 22923066 (Tex.App. Dec.11, 2003) (holding that a sentence of sixty years in prison did not constitute cruel and unusual punishment where defendant failed to register as a sexual offender and was a habitual felony offender);
 
 State v. Mueller,
 
 53 So.3d 677 (La.Ct.App. 2010) (holding that a sentence of ten years in prison did not constitute excessive punishment in violation of Louisiana Constitution).
 
 But see People v. Carmony,
 
 127 Cal.App.4th 1066, 26 Cal.Rptr.3d 365, 369 (2005) (holding a sentence of twenty-five years to life in prison constituted cruel and unusual punishment where a defendant failed to register as a sexual offender and was in violation of a “three strikes law”);
 
 Bradshaw v. State,
 
 284 Ga. 675, 671 S.E.2d 485 (2008) (holding that a mandatory sentence of life imprisonment constituted cruel and unusual punishment where a defendant failed to register as a sex offender for the second time and the offense that caused the reporting requirement was statutory rape). Thus, the practices of other jurisdictions provide little guidance on this issue.2
 

 Taking all of the above analysis into account, appellant’s sentence did not constitute cruel and unusual punishment. As the U.S. Supreme Court recognized in
 
 Rummel v. Estelle,
 
 445 U.S. 263, 284, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), where a defendant was convicted of multiple prior felonies, “[the State] was entitled to place upon [a defendant] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State.” The HVFO statute in Florida is “nothing more than a societal decision that when a person commits yet another felony, he should be subjected to [ ] serious penalty.”
 
 Id.
 
 at 278, 100 S.Ct. 1133. Further, “it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular offense; rather, in applying the Eighth Amendment, the appellate court decides only whether the sentence under review is within constitutional limits.”
 
 Solem,
 
 463 U.S. at 290 n. 16, 103 S.Ct. 3001. Thus, we find that appellant’s consecutive ten-year sentences for failure to report a temporary residence do not constitute cruel and unusual punishment..
 

 For the foregoing reasons, the trial court did not commit reversible error. Accordingly, the judgment of the trial court is AFFIRMED.
 

 DAVIS and MARSTILLER, JJ., concur.
 

 [1]
 

 . “Temporary residence” is defined as:
 

 Temporary residence means a place where the person abides, lodges, or resides for a period of 5 or more days in the aggregate during any calendar year and which is not the person’s permanent residence or, for a person whose permanent residence is not in this state, a place where the person is employed, practices a vocation, or is enrolled a student for any period of time in this state.
 

 § 775.2l(2)(g), Fla. Stat. (2007).
 
 See also
 
 § 943.0435(l)(c), Fla. Stat.
 

 [2]
 

 . Appellant failed to object at trial on undue prejudice grounds pursuant to section 90.403, Florida Statutes (2008). As a result, he waived any possible undue prejudice argu
 
 *983
 
 ment on appeal.
 
 See Mitchell v. State,
 
 734 So.2d 450, 452 (Fla. 4th DCA 1999) (finding undue prejudice issue not preserved when defense counsel objected only on relevance grounds and not on undue prejudice grounds);
 
 see also Steinhorst v. State,
 
 412 So.2d 332, 338 (Fla.1982) (stating "in order for an argument to be cognizable on appeal, it must be the
 
 specific
 
 contention asserted as legal ground for the objection, exception, or motion below.”) (emphasis added).
 

 [3]
 

 . The Florida Supreme Court has declined to address if the scope of the Eighth Amendment to the U.S. Constitution differs from that of article I, section 17 of the Florida Constitution.
 
 See Adaway v. State,
 
 902 So.2d 746, 752 (Fla.2005). Thus, we treat the two as commensurate in scope.
 

 [4]
 

 . To date,
 
 Solem
 
 is the first and only case in which the U.S. Supreme Court held a prison sentence violated the Eighth Amendment to the U.S. Constitution based solely on its length.