PER CURIAM.
 

 In April 2009, a grand jury indicted Appellant Kenneth Jerome Eriby for first-degree murder. The indictment alleged that on October 30, 2008, in Escambia County, Appellant murdered Arthur Roland by shooting him in the head with a firearm, and that the killing occurred either by premeditated design or while committing or attempting to commit robbery, a felony. A jury later convicted Appellant of first-degree murder, and the trial court sentenced him to life in prison without parole. Appellant argues he should have received a judgment of acquittal because the State produced only circumstantial evidence at trial that was insufficient to sustain a conviction. He also argues that the trial court erred in finding prosecution witness Anthony Weatherspoon competent to testify. Without further discussion, we find no abuse of the trial court’s discretion in allowing witness Weatherspoon to testify. After reviewing the evidence
 
 de novo,
 

 [1]
 

 as explained below we approve the trial court’s decision to deny Appellant’s motion for judgment of acquittal. Accordingly, we affirm Appellant’s conviction.
 

 At approximately 7:00 p.m. on October 30, 2008, a friend of victim Arthur Roland found him in his car dead from a single gunshot to the right side of his head. The car, a dark-colored Buick sedan, was parked at the corner of S and Bobe streets in Pensacola. Roland regularly sold marijuana in the vicinity, and inside the console between the front seats of Roland’s car, a crime scene technician found several small baggies of marijuana inside a larger sandwich bag.
 

 At trial, the State’s evidence showed that Appellant routinely bought marijuana from Roland and would get in Roland’s car to complete the transaction. Angela Brown, whose home is at the corner of S and Bobe streets, testified that on several occasions a blue Buick pulled up in front of her house, Appellant and a friend got in the car, drove off, and returned with marijuana. She testified further that the car from which Roland’s body was removed is the same car she often saw Appellant getting into in front of her home.
 

 A few days before the murder, Appellant had a conversation with Elizabeth Prohn during which he showed her a revolver he was carrying and told her “I’m going to get me a drug dealer. I’m tired of being broke.” Days later, Appellant showed up at the home of Kenneth Ray Harvell trying to sell marijuana to him and his son, Kenneth Joseph Harvell. The elder Harvell testified this occurred the day before he saw a news report of a man shot to death in a car at S and Bobe streets. The Harvell home is seven to ten blocks away from that location. The elder Harvell said he and his son were standing
 
 *181
 
 on the porch when Appellant walked up. He did not see how Appellant arrived at the house. He testified that when they declined Appellant’s offer, Appellant showed the butt of a gun inside his jacket and “jokingly” said, “I guess I’ll make a couple of blocks and take it or whatever.” The younger Harvell testified he saw the news report of the shooting later the same day Appellant came to the house. He testified the incident at his home occurred around noon, that Appellant arrived in a green Buick, and that he saw Appellant emerge from the passenger side of the car. In the younger Harvell’s recount of the incident, when Appellant failed to make the sale, he showed a gun and “said it was all right and that he was going to hit a few corners and he’d be back.” “He just basically said he’s going to hit a few corners and do this nigger actually. That’s what he said.” Harvell testified he did not see Appellant get back into the car in which he arrived because “I don’t know where the car was parked. I didn’t see where he got in at.” Both men testified the gun Appellant showed them was a revolver. And the elder Harvell’s granddaughter Nicole Har-vell testified she saw Appellant at her grandparents’ home on October 30, 2008.
 

 Prosecution witness Anthony Weather-spoon testified he was at Jessie Booth’s house the day Arthur Roland was killed. He was there when Appellant arrived at around 4:00 or 4:30 in the afternoon carrying two bags of marijuana and announcing he “just hit a lick at S and Bobe Street.” Appellant also was carrying a black revolver that he showed to Weatherspoon and others at Booth’s house. Weatherspoon said he understood “hit a lick” to mean Appellant had robbed someone, and that Appellant doled out the marijuana he brought to others to sell for him. He testified Appellant stayed at Booth’s for approximately an hour then left.
 

 Escambia County Sheriffs Deputy Mark Smeester investigated the homicide. As part of his investigation, Deputy Smeester reviewed the call log of Roland’s mobile phone for answered, outgoing and missed calls on October 30, 2008. The call log registered,
 
 inter alia:
 
 answered incoming calls from Appellant’s mobile number at 3:15 p.m. and 3:25 p.m.; outgoing calls to Appellant’s mobile number at 3:43 p.m. and 4:35 p.m.; and an answered incoming call from Roland’s girlfriend at 4:54 p.m. The 4:35 p.m. call to Appellant was the last outgoing call on Roland’s call log for October 30, 2008, and the 4:54 p.m. call from the girlfriend was the last incoming call answered. Deputy Smeester also obtained a videotape from the security camera of an auto body shop located directly across the street from the Harvell residence. It showed at approximately 4:55 p.m. on October 30, 2008, a vehicle pulled up next to the house, and someone exited the front passenger side of the vehicle, walked toward the residence, returned shortly and got back in the car. The car remained for a few minutes, then the same person again exited the front passenger door, walked toward the house, returned to the car moments later, and the car drove off. Deputy Smeester could not identify the vehicle in the videotape as Roland’s. Neither could he identify the person getting in and out of the car as Appellant.
 

 The man who discovered Roland dead in his car at 7:00 p.m. initially saw the car parked at S and Bobe streets at 5:00 p.m. as he drove by. Neither he nor anyone else saw Appellant at that location or witnessed the shooting, and no forensic evidence directly tied Appellant to the murder. Crime scene technicians found no bullet casing either in the car or on the ground, and recovered no discernable fingerprints from the car. DNA swabs of the car’s interior and exterior door handles yielded no match to Appellant, though he
 
 *182
 
 could not be excluded as a “possible contributor.” The medical examiner deemed the shooting a homicide based on stippling around the bullet wound that would not be apparent if the gun was pressed against the head as is typical in suicide. She estimated the shot was fired from between two inches and four feet away. The bullet removed from the victim’s head during autopsy had markings on it “most consistent” with having been shot from a revolver. And revolvers do not eject bullet casings when fired. But because the gun witnesses saw Appellant with was not recovered, it could not be tested to determine whether it fired the fatal shot.
 

 The State produced no direct evidence that Appellant killed Roland, but relied solely on circumstantial evidence. To survive a motion for judgment of acquittal, the State’s circumstantial evidence not only must be sufficient to establish each element of the offense, the evidence also must be inconsistent with the defendant’s theory of events.
 
 [2]
 
 Keeping in mind that it is within the jury’s province to assess witness credibility and resolve conflicts in the evidence,
 
 [3]
 
 and viewing the evidence in a light most favorable to the State, as we must,
 
 [4]
 
 we conclude the State’s evidence in this case is both sufficient to prove Appellant committed murder and decidedly inconsistent with Appellant’s defense theory.
 

 The evidence showed that at least two days before marijuana dealer Arthur Roland was shot to death, Appellant planned to “get me a drug dealer” because he was “tired of being broke.” This he announced to Elizabeth Prohn while showing her his gun, a revolver. On October 30, 2008, the date of the shooting, Appellant and Roland called each other twice between 3:15 p.m. and 4:35 p.m. On that date, Appellant also was seen getting out of the passenger side of a dark-colored Buick at the home of Kenneth Ray Harvell and Kenneth Joseph Harvell. He approached them as they stood on their porch and offered to sell them marijuana. When the Harvells turned Appellant down, he showed them he had a revolver and said he would hit a few more blocks or corners and then “take it” or “do this nigger.” Later, he arrived at Jessie Booth’s house carrying two bags of marijuana sufficient to distribute to others to sell for him, displaying his revolver, and saying he had just “hit a lick” at S and Bobe streets. Roland was killed with a bullet bearing markings “most consistent” with being fired from a revolver. Revolvers do not eject bullet casings upon being fired, and indeed, no bullet casing was found in Roland’s car or on the ground around the car. We find this evidence sufficient for the jury to conclude that Appellant, who was “tired of being broke,” either premeditated killing a drug dealer to get drugs to sell himself or planned to take the drugs at gunpoint. Appellant targeted Arthur Roland, a dealer from whom he frequently bought marijuana. He drove around with Roland for a period, shot him, and took enough marijuana to distribute to others to sell for him.
 

 Furthermore, the evidence is inconsistent with Appellant’s theory of defense. Appellant, his sister, his stepfather and Jessie Booth testified for the defense. According to their testimony, Appellant bought $25 worth of marijuana from Arthur Roland on October 30, 2008, between
 
 *183
 
 3:30 p.m. and 4:00 p.m. in the parking lot of the Howard Johnson hotel where he had been staying with his girlfriend. Around 4:30 p.m., his sister picked him up from the hotel and, after stopping at a convenience store and the sister’s boyfriend’s house, she dropped him off at his mother’s house between 5:00 p.m. and 6:00 p.m. While there, Roland called Appellant to say his payment for the marijuana was $3 short, and “he was just laughing.” Appellant said he was at his mother’s house for approximately one hour. His sister then drove him to Jessie Booth’s house where he stayed for “an hour, two hours” before returning to the hotel for the rest of the night. Appellant denied seeing Roland after their hotel parking lot transaction. He denied possessing a firearm that day. He denied going to the Harvells’ house, though he testified he telephoned them in hopes he could sell them some crack as he had done in the past. And he denied being anywhere near Bobe Street.
 

 Because the State’s circumstantial evidence was sufficient to establish either premeditated murder or felony murder, and was inconsistent with the defense theory, the trial court correctly denied Appellant’s motion for judgment of acquittal and sent the case to the jury.
 
 See Evans v. State,
 
 26 So.3d 85, 89 (Fla. 2d DCA 2010) (“If an inconsistency exists between the defendant’s theory of innocence and the State’s evidence, then the trial court should deny the motion for judgment of acquittal and allow the jury to resolve the inconsistency.”) citing
 
 Boyd v. State,
 
 910 So.2d 167, 181 (Fla.2005).
 

 AFFIRMED.
 

 WOLF and MARSTILLER, JJ., concur.
 

 DAVIS, J., concurs in result.
 

 [1]
 

 .
 
 See Reynolds v. State,
 
 934 So.2d 1128, 1145 (Fla.2006).
 

 [2]
 

 .
 
 See generally Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002);
 
 Andrews v. State,
 
 - So.3d -, -, 2011 WL 3558148 (Fla. 1st DCA 2011) (citing
 
 Darling v. State,
 
 808 So.2d 145, 156 (Fla.2002)).
 

 [3]
 

 .
 
 See generally Jent v. State,
 
 408 So.2d 1024, 1028 (Fla.1981).
 

 [4]
 

 .
 
 See generally Mosley v. State,
 
 46 So.3d 510, 526 (Fla.2009);
 
 Taylor v. State,
 
 13 So.3d 77, 78 (Fla. 1st DCA 2009).