489 So.2d 143 (1986)
Edward Adam FRIDOVICH, Appellant,
v.
STATE of Florida, Appellee.
No. 84-1026.
District Court of Appeal of Florida, Fourth District.
May 28, 1986.
Rehearing Denied June 26, 1986.
*144 Glen L. Brock, Lakeland, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert Teitler, Asst. Atty. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
Appellant Edward Fridovich was charged with first degree murder of his father and, upon trial, convicted of manslaughter. Because we find the trial court erred in refusing to admit expert evidence as to whether the fatal wound was the result of an accident, we reverse and remand for a new trial.
Fridovich admitted involvement in the shooting death of his father but contended that the shooting was an accident. Included in the evidence was a recording of Fridovich's call to the police immediately after the shooting. The main evidence against Fridovich on the first degree murder charge came from family members whose motivations and credibility were substantially challenged by other evidence. Extensive evidence was also admitted concerning the original investigation by police authorities and their initial conclusion that the *145 shooting was accidental. One of the factors persuading Captain Hoffner, an investigator on the case, was the unusual angle of entry of the shot. Hoffner worked closely on the investigation with Dr. Tate, the county medical examiner, who performed the autopsy. Dr. Tate corroborated Hoffner's testimony about the upward angulation of the wound. Dr. Tate's autopsy report, which concluded that the shooting was accidental, was admitted into evidence. During the state's case and again during the defense case, the defense proffered the testimony of Dr. Tate that the circumstances of the shooting were consistent with accident. During each proffer, Dr. Tate detailed the basis for his opinion, including his autopsy findings, his familiarity with the police investigation, and his consultations with two other medical examiners with expertise in the area of gunshot wounds. After listening to the proffers and hearing argument of counsel, the trial court refused to permit Dr. Tate to discuss his opinion or the basis for it before the jury.
The court below determined that it was not within the medical examiner's expertise to testify to the manner of death, as opposed to the cause of death. In support of this ruling, the state cites Sections 406.11(1) and 406.13, Florida Statutes (1983), which define the scope of the medical examiner's professional duty. In our view these statutory provisions have a distinct and separate purpose and were not intended to supplant the provisions of the evidence code, which sets out the applicable guidelines for the admission of expert testimony in court proceedings. Section 90.702, Florida Statutes (1983) provides that expert testimony is admissible if it is relevant and would be helpful to the trier of fact in understanding the evidence or determining a fact in issue at the trial. In addition, section 90.703 permits the expert to offer an opinion on an ultimate issue to be decided by the jury. Applying those provisions to the circumstances of this case, we believe the trial court should have permitted the examiner to testify to his opinion, based upon evidence of the autopsy he performed on the victim, the examiner's education and experience, and his familiarity with the circumstances of the shooting. That this opinion as to the manner in which the fatal wound was inflicted was within Dr. Tate's area of expertise is reinforced by the fact that he included it in his official report, which was admitted in evidence.
Spradley v. State, 442 So.2d 1039 (Fla. 2d DCA 1983), relied upon by the state, is not to the contrary. The court in Spradley held that it was error to admit the medical examiner's conclusion that the victim's death was a homicide, where an insufficient predicate was laid for that opinion. Id. at 1043. In the present case, defense counsel laid a thorough predicate covering Dr. Tate's knowledge of the circumstances surrounding the incident and his familiarity with the police investigation as well as his experience in investigating homicides. These crucial factors were lacking in Spradley. The state also cites Spradley for the proposition that an expert may not give an opinion as to the guilt or innocence of a person accused of a crime. This court has recently clarified this issue in Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986), where we distinguished legal conclusions, which a medical expert may not offer, from expert opinions, which are admissible so long as the expert is qualified to render the opinion. Id. at 1386-87. We do not believe that Dr. Tate's opinion that the circumstances of the death known to him were consistent with an accidental shooting constituted a direct comment on the guilt or innocence of Fridovich, any more than an expert's opinion as to the sanity of a defendant would do. Such opinions may support a conclusion that a defendant is not guilty, but the opinions themselves are directed to expert inferences to be drawn from a set of facts, not personal opinions of guilt or innocence. Case law reflects that medical examiners are routinely called to offer the sort of opinion offered here, see Handwerk v. State, 404 So.2d 828 (Fla. 3d DCA 1981). We also believe that Dr. Tate's opinion was admissible because his conclusion, but not the reasons therefor, *146 had already been admitted in evidence as part of his report, and others had been allowed to express their opinions as to whether the shooting was accidental.
We also believe the error was substantial and prejudicial, despite the fact that the medical examiner's report, including Dr. Tate's opinion, was admitted in evidence. As with most opinions, it is the reasoning behind the opinion that counts, rather than the opinion itself. The appellant had the right to present live testimony in support of his theory of defense. Further, since the credibility of the state's witnesses was in doubt, Fridovich might well have been prejudiced by the court's refusal to admit highly probative expert testimony in his behalf. This is especially true here where the jury, by returning with a verdict for manslaughter, obviously rejected much of the state's proof as to a premeditated killing.
Our decision on the admissibility of Dr. Tate's testimony and the necessity of a new trial moots many of the other issues raised.[1] However, we believe it necessary to discuss some of those issues to avoid problems upon retrial. Fridovich claims the evidence was insufficient to sustain the verdict of guilty of manslaughter. On this issue, the sum total of his argument goes to the character, trustworthiness and credibility of the witnesses for the state. Issues of credibility are for the jury, even where witnesses have been severely impeached. Jent v. State, 408 So.2d 1024, 1028 (Fla. 1981); Silvestri v. State, 332 So.2d 351, 353 (Fla. 4th DCA 1976). The record reflects an abundance of evidence which, if believed by the jury, would have been sufficient to convict for first degree murder, and was clearly sufficient to sustain the lesser charge of manslaughter. In addition, the jury was entitled to rely on the testimony of three firearms experts that the gun was in good working condition and would not discharge without a forceful pull on the trigger.
Fridovich also contends that the state failed to establish the corpus delicti of homicide and should not have been allowed to use statements he allegedly made to family and others against him. The corpus delicti of a homicide consists of the fact of death, the identity of the victim, and the criminal agency of another. Drysdale v. State, 325 So.2d 80, 82-83 (Fla. 4th DCA 1976). The corpus delicti may be established by direct or circumstantial evidence. Bassett v. State, 449 So.2d 803, 807 (Fla. 1984). Fridovich contends that the state could not rely upon the incriminating statements allegedly made by him to his sister and others both before and after the shooting to prove the "criminal agency of another" element. However, it has been held that extra-judicial statements or admissions made by the defendant to laymen are admissible as part of the corpus delicti, while confessions to law enforcement officials are not. Nelson v. State, 372 So.2d 949, 950 (Fla. 2d DCA 1979), cert. denied, 396 So.2d 1130 (Fla. 1981); accord, Dunn v. State, 454 So.2d 641, 642 (Fla. 5th DCA 1984); Padro v. State, 428 So.2d 290 (Fla. 3d DCA 1983); contra, Williams v. State, 117 So.2d 548 (Fla. 2d DCA 1960). Under the Nelson doctrine, the statements would be admissible as part of the corpus delicti. In our view the court correctly ruled that the corpus delicti of the crime was established even without consideration of the statements. There was expert testimony that the fatal shot was fired from a distance of six feet, that the gun was in good working condition and that it would take substantial direct pressure on the trigger to cause the weapon to discharge. Fridovich claims that this evidence may be equally consistent with an accidental shooting. However, in establishing the corpus delicti, it is not necessary that the state prove the elements beyond a reasonable doubt; it is enough if the evidence tends to show that a crime was committed. Bassett, 449 So.2d at 807. We think it was sufficient here.
*147 We also reject contentions that the trial court erred in refusing to give a circumstantial evidence instruction, Perdue v. State, 421 So.2d 816 (Fla. 4th DCA 1982), that the court erred in refusing to declare a mistrial, or that the manslaughter verdict was invalid as being inconsistent with the proof offered at trial, see Silvestri, 332 So.2d at 353.
Accordingly, we reverse and remand this cause with directions for a new trial or further proceedings in accord herewith.
DELL and WALDEN, JJ., concur.
NOTES
[1] Among the other errors asserted but not decided is a claim that the guilty verdict should be voided because of a letter written after trial by six jurors indicating their belief that Fridovich was innocent and that they voted for conviction for improper reasons.