FARMER, J.,
dissenting.

Once upon a time in a land far, far• aiuay called Aliceland, goods sold in the marketplace had a secret trait unknown to anyone unlucky enough to buy them. A wheelbarroiv would fall apart if anything was placed in it. A two-wheeled hand cart woidd crumble if loaded with anything. A ladder would just naturally collapse if climbed and work attempted ivhilst standing on it. Goods in Al-iceland do not function in the ordinary way they were meant to work. Nothing works as expected.

So if someone buys a ladder, he must not use it because its legs will secretly be displaced and thus collapse. He must be hoisted by crane and carefully placed on it without causing any movement, for climbing woirld displace the legs — and down comes the ladder. If he should find himself perched upon the third rung of a five-rung ladder, on no account should he move about or work, nor tiuist his body, nor extend his reach. If he does, the ladder will fall doum. Such are the ladders in Aliceland.

Similarly strange things happen in Courts in Aliceland. If an injured buyer sues the seller of such a ladder, before his case can be tried he must first swear that he made sure that all four legs were snugly on the floor and only then 
*304
climbed, the ladder with, great care and caution. He may not say that he ivas unaware of any hidden displacement of the legs as he moved because he did not knoiv that he was unaware.

Then he will not be allowed to call an expert witness to testify that the unintended movement of the ladder is undetectable. Or that it is possible to design and build ladders that won’t secretly move and, collapse ivhen used as intended. Such testimony is absolutely forbidden. It ivill be held to conflict with his statement that he checked the legs as he worked. Never mind that the secret trait is hidden, and users could not possibly be aware that the ladder’s legs simply cannot be reliably set and remain stable.

This is how a trial is done. In Alice-land it is verdict first, evidence later (maybe). For you see, even law suits share the secret trait — nothing works as intended.
[[Image here]]
The substance of plaintiffs actual deposition testimony before trial in this case might be fairly characterized by any reasonable person as making the point that he did not know how the fall occurred. As he put it, he was standing on the third rung holding onto the ladder’s “cap” with both hands, turning slightly to the wall, when suddenly the ladder collapsed beneath him. The trial testimony of his eyewitness supported that understanding. His expert witnesses would have testified that displacement of the ladder feet caused by user movement is insidious and, in their experience, not apt to be appreciated by the user as it occurs. The proffered testimony of plaintiff’s experts as to Type II racking or torsional instability was therefore entirely consistent with the account of the fall given by plaintiff as well as his eyewitness.
The trial judge in this case turned a Florida Court into Aliceland. The decision to exclude every one of plaintiffs expert witnesses was based on the trial judge’s conclusion that plaintiffs intended trial testimony would be inconsistent with the opinions of his expert witnesses. In addition to being a spontaneously conceived Catch-22, as well as an inaccurate characterization of how his testimony might be viewed by a jury, the decision conflicts with the following principles:
1. For nearly forty years it has been recognized in this State that ladders collapsing when used in their ordinary, intended manner can be deemed defective without knowing anything more than that fact. See McCarthy v. Fla. Ladder Co., 295 So.2d 707, 709-10 (Fla. 2d DCA 1974) (“a defect can be inferred from the fact that a new product performs in such a manner as to preclude any other reasonable inference which would suggest that the product was not defective.”) (citing 2 Harper and James, The Law of Torts § 28.12 (“if injury can be traced to a break or collapse of a structure or a machine and the evidence also shows that the article was being put to its ordinary use in the ordinary way when it failed, it is reasonable to attribute its failure to some flaw or defect.”)). The testimony of the eyewitness in this case was sufficient evidence that the ladder was being used in its ordinary, intended manner when it precipitately collapsed. Ladders so collapsing are plainly defective.
2. Experts are permitted to testify based on inferences drawn from facts supplied by other witnesses. § 90.704, Fla. Stat. (2006); Fridovich v. State, 489 So.2d 143, 145 (Fla. 4th DCA 1986); Charles W. Ehrhardt, FLORIDA Evidenoe § 704.1 (2006 ed.) (“An expert may express an opinion based on reasonable inferences that may be drawn from the evidence. The bar against building an inference on an infer *305 ence is not applicable to preclude an expert’s testimony based on reasonable inferences drawn from the evidence”). This principle applies to ladders. Parke v. Scotty’s Inc., 584 So.2d 621, 623 (Fla. 1st DCA 1991). The experts should have been allowed to testify how the ladder was defective and show that the circumstances of plaintiffs fall described by the eyewitness were completely in harmony with then' theory.
3. In negligence actions it is not necessary that plaintiffs testify from personal knowledge as to the specific nature of the event by which they were injured — to know exactly how the mechanics of the injury-causing event played out — because proof of a defect can be made by reasonable inferences from the circumstances. Parke, 584 So.2d at 623. To recover on this claim, Ainsworth did not have to know whether all four feet of the ladder remained rigidly on the floor until it collapsed. In fact, even if he believed himself personally certain that all four feet remained grounded at all times, that hardly invalidates his experts’ theory — which recognizes that the user is often unaware of a shift by one of the legs. The only thing plaintiff was obligated by his personal testimony to establish as to a defective product was that he was using this ladder in its ordinary, intended manner.
4. An expert opinion based on personal training and experience is not scientific evidence subject to analysis under Frye v. United States, 293 F. 1013 (D.C.Cir.1923). Johnson v. State, 933 So.2d 568, 570 (Fla. 1st DCA 2006). This kind of expert testimony is deemed pure opinion testimony because it is based on the expert’s own observation and study. Rickgauer v. Sarkar, 804 So.2d 502, 504 (Fla. 5th DCA 2001). As we explained in Holy Cross Hospital v. Marrone, 816 So.2d 1113 (Fla. 4th DCA 2002):
“ ‘Pure opinion’ ” refers to expert opinion developed from inductive reasoning based on the expert’s own experience, observation, or research, whereas the Fnje test applies when an expert witness reaches a conclusion by deduction, from applying new and novel scientific principle, formula, or procedure developed by others.”
816 So.2d at 1117; see also Jones v. Goodyear Tire & Rubber Co., 871 So.2d 899 (Fla. 3d DCA 2003) (expert opinion based on expert’s own experience or training is deemed “pure opinion” and need not pass the Frye test because the testimony is based on the expert’s personal opinion). It is undisputable that the trial court’s reliance in this case on the failure of plaintiffs expert witnesses to follow the Frye methodology for general scientific acceptance of new or novel scientific discoveries was improper under our own decision. The Fnje methodology was unnecessary to qualify the testimony of these particular witnesses — who were not asked to deal with a new, novel scientific principle. If one had to characterize the nature of then' knowledge, training and experience, it had to do with applied engineering, not with pure science.
5.It is true (but irrelevant) that no one cited Cassisi v. Maytag Company, 396 So.2d 1140 (Fla. 1st DCA 1981), to the trial judge in the argument on whether plaintiffs expert witnesses should be excluded. Plaintiff did argue in the trial court the very same principle for which Cassisi stands — that the trier of fact is entitled to infer a defect when a product collapses while being used as intended. The fact that his case authorities then did not include one now being presented on appeal has nothing to do with preservation of the issue. See Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982) (“an appellate court will not consider an issue unless it was pre *306 sented to the lower court ... to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.” [e.s.]).
Appellee Keller never objected in its Answer Brief or at oral argument to plaintiffs reliance on Cassisi. In fact the Answer Brief does not even mention Cassisi. On what basis, therefore, does the majority object? Preservation of appellate issues does not depend on whether the party cites every single case on the subject to the trial judge. It depends instead on whether the substance of the argument being made on appeal was made to the trial court. See Black v. State, 367 So.2d 656, 657 (Fla. 3d DCA 1979) (ground argued on appeal must be same as ground argued in trial court).
So why is the majority basing its decision on the failure to cite Cassisi to the trial judge? The substance of the Cassisi holding was argued in the trial court. The record fairly supports the lack of any waiver of this issue. Its substance, accepting an inference of defect, is incontrovertible.
6. The majority does not explain under what authority a trial judge can preemptively exclude expert testimony because it would conflict with a narrow interpretation of deposition testimony reasonably subject to an equally plausible but contrary interpretation of the same event. The majority, along with the trial judge, are crediting Keller’s version of contested facts over plaintiffs. Just what legal principle allows all these judges to resolve this central factual dispute in the case? Isn’t it the role of the jury to resolve contested facts?
The sufficiency of an expert’s opinions is for the jury to decide, not the trial judge. See Vorsteg v. Thomas, 853 So.2d 1102, 1103 (Fla. 4th DCA 2003) (jury is free to determine the credibility of expei’ts and, where there is conflicting evidence, the weight to give to their opinions).
The decision of the majority is in conflict with the all of the foregoing authorities. I dissent.